# 736    SUPREME COURT.

THOMAS W. CARR, APPELLANT, VS. JOHN G. THOMAS ET AL., APPELLEES.

1. Under the Bankruptcy Act of Congress of 1867, an attachment levy is not displaced by the bankrupt proceedings unless the same are commenced within four months after the levy of the attachment.

2. The Fifth Section of Chapter 1939, Laws of 1873, found in McClellan's Digest, page 219, does not relate to the subject or the object of the act as expressed in its title, or to any matter properly connected therewith, and said section is inoperative and void under Section 14, of Article IV., of the Constitution.

3. Where a deed of conveyance is executed and delivered, but not recorded until after an attachment has been levied in a suit against the grantor, the lien of the attachment will bind the property as against the grantee in the deed, unless the attaching creditor had notice of the conveyance at the time of the levy of the attachment.

4. Where parties proceed to a hearing of a suit in equity all the allegations of the answer responsive to the bill are taken as true, unless they are disproved by evidence of greater weight than the testimony of a single witness.

Appeal from the Circuit Court for Madison county.

This suit was commenced in Leon county and transferred to Madison.

Carr filed a bill to foreclose a mortgage executed by John G. Thomas, dated 24th February, 1872, upon certain land in Leon county, in favor of the firm of Ketchum & Hartridge, of Savannah, to secure the payment to them of six hundred dollars and interest, according to a promissory note due December 1, 1872, signed by said Thomas, which note and mortgage were assigned by Ketchum & Hartridge to Young & Gordon, of Savannah, and by Young assigned to Carr. The bill was filed May 1, 1878.

In November, 1879, an agreement was filed, which was entitled " William P. Drumright vs. Thomas W. Carr, action of ejectment," and " Thomas W. Carr vs. John G.

Thomas, bill for foreclosure," signed by the attorneys and solicitors of the parties, reciting that an action of ejectment had been commenced in March, 1878, by Drumright against Carr for the recovery of the land described in the mortgage, Carr being in possession, and it was desirable that all questions " capable of being brought to an issue between them of concerning or growing out of, or connected with their relation to said lands and rents, and profits and occupation, and use thereof, and said mortgage and mortgage debts, and all accounts and claims in reference thereto shall be determined and decided in one suit or action. It is therefore consented and agreed between the said parties that the said actions and suits shall be, and shall be decreed and held to be, united and consolidated into one suit and action, and that all questions at issue, or capable of being brought to issue as aforesaid between the said parties, shall be decided and determined in one united and consolidated suit and action, in accordance with the principles and practice of courts of chancery ; the said parties mutually waiving all questions of jurisdiction and of the statute of limitations. The said Drumright to become a party defendant to the said bill of foreclosure with the right to answer the same, his answer to be available to him both for an answer and as a cross-bill for the setting up of any defences that he may have against the foreclosure of said mortgage, and also for the assertion and maintenance and litigation of all the rights and claims which he may have, whether in law or in equity, to and respecting said land, and of the rents, issues and profits, use and occupation and proceeds thereof." The answer to the bill of complaint to be put in without oath.

Drumright thereupon filed his answer and cross-bill, alleging that he was informed that the mortgage had been satisfied by the shipment of cotton, the property of Thomas,

to the mortgagees; that soon after that the mortgagees were declared bankrupts, and their property went into the hands of assignees, one of whom was Lewis Young. Drumright further alleges that on or about the 15th March, 1873, he purchased from defendant, Thomas, the land in question for $2,910.25, which he paid, and the conveyance thereof was executed in Georgia, and that Carr was immediately informed thereof; that the title deed was not immediately forwarded for record, but soon afterwards was sent to his attorney in Tallahassee to be recorded, but through inadvertence or neglect it was not recorded until October 8, 1874, of which delay he was ignorant, and supposed it had been recorded within a few months after its date; that after Carr was informed of the sale, to-wit: on the 21st October, 1873, he (Carr) sued out a writ of attachment against the property and had it levied on the land, and on February 7, 1876, obtained judgment, under which the land was sold in May, 1876, Carr being the purchaser, and a deed was made to him by the sheriff; that Carr knew also before taking judgment that proceedings in bankruptcy were, or had been, pending in Georgia against Thomas, who had been declared a bankrupt and had been discharged from the said indebtedness, Carr being one of the creditors mentioned in the schedule, and the said debt being one of the debts therein mentioned; that Carr knew when the mortgage was assigned to him that it had been satisfied by shipments of cotton; denies that the assignee, Young, made any valid assignment of the mortgage, or that complainant is the holder of the note, or that he paid value for it, and demands strict proof; charges that Carr has received the rents and profits of the land from 1873 to the present time, and should be charged therewith, and if anything is found due to complainant upon the note and mortgage, after deducting the rents and profits, Drumright offers to pay it

and redeem the property; charges that the proceedings of complainant are inequitable, and the foreclosure was instituted for the purpose of bolstering his pretended title under the attachment suit and sheriff's sale; insists that Carr should not be permitted to hold the mortgage security for more than he paid for it; that Carr knew of the sale to Drumright, and was requested by Thomas to act as Drumright's agent, and account to him for the proceeds of the place; that Carr knew of the bankruptcy and final discharge of Thomas before he obtained judgment under his attachment, and the latter and the sale were a fraud upon Drumright.

The cross-bill prays that the attachment proceedings, judgment and sale to Carr be adjudged void and be cancelled; that Drumright be decreed to be the rightful owner of the land and put in possession thereof; that Carr be decreed to be answerable to him for the use and occupation from the date of his deed; that an account be taken thereof and for general relief; that a receiver be appointed to take charge, &c.

To this answer and cross-bill complainant demurred upon the ground that it does not make a case which establishes his right, title or interest in the land claimed by him.

The demurrer was overruled.

Complainant then plead "that at the time complainant commenced proceedings of attachment against John G. Thomas by attaching the land which is the foundation of this suit, * * he, the said Thomas W. Carr, having no notice of such deed, and the said deed not having been recorded within six months after the execution of the same, is void as against the said Thomas W. Carr as subsequent purchaser, and the said complainant prays judgment, &c.

At the final hearing this plea was overruled.

Complainant answered the cross-bill, and says that

Thomas, neither by himself nor by his agent, ever paid the note secured by the mortgage or any part of it; denies that he shipped cotton to the mortgagees to pay it as alleged; denies that he was informed immediately after the purchase of Drumright of the land in controversy, and says that he knew nothing of it and had no notice whatever of it until after he had instituted his attachment proceedings about 21st October, 1873; denies Drumright's title, or that his deed was acknwledged or recorded at that time, and denies that the consideration for the deed was a valid one, and demands proof; denies that it was sent to Tallahassee for record, as alleged, immediately after it was executed. He alleges that he did attach the land on 21st October, 1873, and obtained judgment in February, 1876, and at a sale under execution thereon he purchased it in May, 1876, and insists that he was a purchaser for a valuable consideration. The judgment was obtained for about $1,100 for money loaned by him to Thomas in 1872, for which he held Thomas' due bill for $1,000 unsecured; denies that he had notice of any proceedings in bankruptcy on the part of Thomas or by his creditors, and received no notice as a creditor or otherwise pending such bankruptcy proceedings; demands proof of such proceedings and the date thereof; alleges that the assignees of Ketchum & Hartridge duly sold and assigned the mortgage to him for $600 and interest which was paid by him; denies the right of Drumright to any of the rents and profits, and says the deed to Drumright is void; prays that Drumright's answer and cross-bill be dismissed, and for relief upon his bill of foreclosure as therein prayed.

John G. Thomas was sworn as a witness for defendants. He testified that he made and executed a deed to Wm. P. Drumright of the lands described, *dated* on or about 15th March, 1873. The consideration was $2,910. Witness re-

sided in Dooley county, Ga., and Drumright in Macon county, Ga. Drumright had loaned me money at various times until the amount reached $2,800, which I was anxious to pay, and sold the property to him for the amount I owed him and a note he held against my brother, which made the foreclosure money $2,910. Thomas W. Carr was agent in charge of the place at the time. In July or August, 1872, I met Carr and informed him of the sale to Drumright, and asked him to continue the supervision of the place until Drumright could come over. Carr asked me the price obtained. I believe it was neglect on Drumright's part in not having had his deed promptly recorded. Wm. A. Carr, witness' father-in-law, conveyed the property to witness so that it could be sold to pay off his debts, and for that purpose. Witness filed his petition in bankruptcy February 28, 1874, and received his discharge in June, 1875. Thomas W. Carr's debt against me was duly set forth in the schedule of debts, and I was discharged therefrom. I had got $600 from Ketchum & Hartridge, which was secured by mortgage on the Florida land. This $600 debt was reduced to $275 by shipment of cotton to K. & H. by Thomas W. Carr from the Florida place. This was credited on the books of K. & H. I was informed by their legal adviser and business agent that the shipment had reduced the mortgage to $275.

On cross-examination he testified that the deed to Drumright was delivered *as soon as executed*. Does not remember the names of the witnesses to the deed. We agreed on terms, the deed was made and given, the evidence of my debt surrendered, and a small note of my brother given me.

*Question*—State particularly what constituted the sale.

*Answer*—" I think the full answer already given is an answer to this, but will say the agreement of the purchaser,

Drumright, and witness, the making and passing the deed to said purchaser of my notes due him and the note he held on my brother constituted the sale." I informed complainant, Thomas W. Carr, that I had sold the place. Information was given said Carr by word of mouth in Athens, Ga., in the summer of 1873. I told him I had sold the land. Carr told me during my visit at that time to Athens that I must pay him the interest the coming season, which I told him I expected to do. Am positive I never mentioned the Ketchum & Hartridge mortgage to him. I don't remember who mailed the deed to Florida for record. Suppose it must have been Drumright, as it was his deed and in his possession. Don't know when the deed was sent to Florida for record, but think it was sent *as soon as I learned of Carr's attachment*, and informed Drumright of the same. Thomas W. Carr knew that the titles to the property were given to me by his father for the express purpose of selling the same to relieve me of pecuniary embarrassments.

This is the substance of the oral testimony. The deed executed by John G. Thomas, of Dooley county, Ga., to Wm. P. Drumright, of Macon county, Ga., was put in evidence. It bears date March 15, 1873, witnessed by G. T. Bell, and A. J. Hamilton, J. P. The acknowledgment in Dooley county, Ga., was taken September 22, 1874, and it was recorded October 8, 1874, in Leon county.

The cause was brought on to be heard before the Judge of the Third Circuit at Madison, and a decree was made July 9, 1881, to-wit:

1. That the plea of Thomas W. Carr to the cross-bill be overruled.

2. That the deed from the sheriff of Leon county to Thomas W. Carr dated May 15, 1876, in pursuance of a sale under an execution issued upon a judgment in an attachment suit of Carr against Thomas is null and void as

against the deed of Thomas to Drumright dated March 15, 1873.

3. That said Willlam P. Drumright has the right of entry and possession of the real estate mentioned, and that he recover of and from Thomas W. Carr the mesne profits thereof since March 15th, 1873, Carr having been in possession, the mesne profits to be hereafter ascertained.

4. That Carr deliver possession to Drumright.

5. That the bill of foreclosure, &c., be reserved for further consideration.

*J. T. Bernard* and *D. S. Walker*, *Jr.*, for Appellant.

*R. B. Hilton* for Appellees.

THE CHIEF-JUSTICE delivered the opinion of the court.

This case is peculiar in some respects because it embraces a suit in equity to foreclose a mortgage by complainant and a suit at law in ejectment by one of the defendants against the complainant, who is in possession of the premises, claiming title by virtue of an attachment lien, judgment and execution, and a sale and deed from the sheriff.

Nothing was determined by the decree except the title to the land as between the defendant, Drumright, who claims under a deed from Thomas, his co-defendant, and the complainant, who claims under his attachment lien, judgment and execution.

The foreclosure proceedings remain undisposed of. The only issue determined was as to the several legal titles of Carr, the complainant, and Drumright.

Waiving the question of equitable cognizance of the dispute as to the legal title, we proceed to examine the correctness of the judgment as to the title, and the grounds of error alleged upon the pleadings.

Carr filed his bill to foreclose a mortgage executed by

Thomas to Ketchum & Hartridge, of Savannah, who went into bankruptcy, and their assignees, as is claimed, assigned the mortgage to Carr. Drumright, who holds a deed from Thomas, had commenced his action of ejectment against Carr (who is in possession, claiming title of the land,) before the institution of the foreclosure suit. The parties entered into an agreement to submit their whole matters of litigation to the chancellor to determine everything relating to the mortgage, the debt secured by it and the rights of the complainant thereto, and the question of title as between Thomas and Drumright. The statement of the case shows the respective claims of the parties. The record and pleadings in the ejectment suit are not included in this record, but the claims of the parties are set forth by cross-bill and the answer thereto by the original complainant, filed in the foreclosure suit pursuant to the stipulation of the parties. Thomas does not plead.

It is insisted by appellant, the complainant in the foreclosure suit, that a cross-bill cannot be filed after default entered. This point is not well taken for two reasons. First, there had been no default entered as against Drumright or Thomas; and second, the cross-bill was filed by consent of all parties, and embraces precisely what they agreed should be submitted to the court.

Appellant alleged as error the overruling of the demurrer to the cross-bill. The ground of demurrer is that the cross-bill does not show any right, title or interest of Drumright in the land. We think it does. It alleges a purchase by Drumright, and a deed to him from the legal owner duly executed and delivered, the possession of the grantor by his agent, notice to Carr of the conveyance before the levy of his attachment, and alleges that the claim of Carr, under which he obtained the attachment and sheriff's sale, had been extinguished by Thomas' bankruptcy proceedings.

It goes further and alleges that the mortgage debt was paid. How a better title can be *alleged* we cannot understand. The demurrer was rightly overruled.

It is urged that the cross-bill introduces new matter not pertinent, and that it is multifarious, introducing matter and the rights of third persons not parties to the suit, and that therefore the cross-bill is demurrable. But no where in the record do we find any such questions raised by any pleading; (1 Dan. Ch. Pr. 3 Am. Ed., 352;) and, besides, the stipulation of the parties is broad enough to cover any fact or ground of action or defence affecting the rights of either party. The cross-bill was evidently designed and intended by both parties as a bill of peace, according to the stipulation.

It is unnecessary to consider here the questions supposed to be raised upon the overruling of the plea, as the matter is elsewhere disposed of.

The material questions are whether Carr's claim and his attachment lien were extinguished by the supposed proceedings in the matter of the bankruptcy of Thomas; whether Drumright had a valid deed of conveyance of the land, and whether Carr had notice of such conveyance at the time of the levy of his attachment.

As to the effect of the bankruptcy proceedings, the appellant discusses it very briefly, and appellee does not allude to it. He therefore does not consider it important. We find, however, by looking at the act of Congress of March 2, 1867, relating to bankruptcy, that the title of the bankrupt's property is vested in the assignee by the assignment and conveyance by the register, and that the same operates " to dissolve any attachment made within four months next preceding the commencement of the proceeding." There is no record evidence that any such proceedings were had. The cross-bill fails to show when they

were had. Carr denies any notice or knowledge of any such proceedings, and demands due proof. There is no evidence whatever that any assignment in bankruptcy was ever recorded in Leon county, Fla., as required by Sec. 14 of the Act of 1867.

From the answer to the cross-bill, and from the testimony, we learn that the writ of attachment was obtained and levied on the land October 21, 1873, and that the proceedings in bankruptcy were commenced by the filing of Thomas' petition February 28, 1874, more than four months after the levy of the attachment. It does not appear that any obstacle whatever was interposed by Thomas or others against the prosecution of Carr's claim to judgment and execution, and that judgment stands unreversed. The bankrupt act did not displace the lien of the attachment. Thomas' legal title, as appeared of record, was levied upon by the attachment and sold.

If Thomas had any interest in the land at the date of the bankruptcy assignment it would doubtless have passed, by proper proceedings, to the assignee, subject to the attachment lien, as we understand the act of Congress. But if Thomas, at the time of filing his petition, had in good faith conveyed to Drumright, there was no interest in him which he could assign, and none vested. (See §35, Bankrupt Act of 1867.)

We cannot conclude that any bankruptcy proceedings were had to affect Carr's attachment suit. This controversy is between Drumright as the grantee of Thomas and Carr as an attaching creditor during priority of an unrecorded deed, and these are matters depending upon the statutes of Florida. The issue is made by the cross-bill and the answer.

It is urged by counsel for appellees that the deed of Thomas to Drumright is void as to him as a subsequent purchaser, by force of Sec. 5 of Chap. 1939, Laws of 1873,

(found in McClellan's Dig., 219, Sec. 20.) The section reads thus: " Every conveyance of real estate within this State hereafter made, which shall not be recorded in the county in which the lands are situated within six months after the execution thereof, shall be void as against any subsequent purchaser."

The title of the act in which the section is found is: "An act providing for the acknowledgment of deeds and other conveyances of land." Section 14 of Article IV. of the Conststution reads thus: " Each law enacted in the Legislature shall embrace but one subject and matter properly connected therewith, which *subject* shall be briefly expressed in the title." :

We are loath to pronounce any act of deliberate legislation to be invalid, but when an act like this, which in effect is promotive of fraud in various ways, comes before us we feel no reluctance in declaring its invalidity, if there is ground for so doing. The section in terms gives to a second purchaser or grantee of land from the former owner a good title against a former grantee who has bought and paid for the land, though the second purchaser may know of the former conveyance, if the first deed is not recorded within six months after its execution. As to the second deed the first is declared void, absolutely, in law, if recorded after six months, and though the second is executed after the recording of the first. A provision so mischievous in its effects can hardly be said to have been deliberate legislation. The *title* of the act shows its purpose to be a regulation of the " *acknowledgment* of deeds and other conveyances of lands." The *subject* of the fifth section is a declaration of the effect of omitting to *record* a conveyance. The one subject does not embrace or have any proper connection with the other. The result is that the said fifth section is void by the terms of the Constitution, which prohibits leg-

islation upon one subject under the guise of an act relating to another object and purpose. For a general discussion of the subject we refer to Cooley's Constitutional Limitations, 81, 83, 141, 150, and the authorities there cited.

If, therefore, we may treat Carr as a subsequent purchaser, it cannot be well claimed by him that the failure to record the deed to Drumright within six months gives him any advantage by reason of the fifth section of Chap. 1939.

The question then arises as between Drumright, who claims under a deed dated March 15, 1873, but not recorded until October 8, 1874, and the title of Carr by his attachment levy of October 21, 1873, under which he obtained the sheriff's deed, to be determined by the recording acts.

The statute provides that "no conveyance, transfer or mortgage of real property, or of any interest therein, shall be good or effectual in law or in equity against creditors or subsequent purchasers for a valuable consideration and without notice, unless the same shall be recorded in the office assigned by law for that purpose;" and to entitle it to be recorded it must be duly proved or acknowleged. Act November 15, 1828, McC.'s Dig., 215, §6.

The service of a writ of attachment binds the property attached except against pre-existing liens.. Act February 17, 1833; McC.'s Dig., 114, §18.

Already at this term we had occasion to examine the effect of the above section of the recording act. (Massey vs. Hubbard.) The conclusion to which we arrived in that case we believe to be the correct construction of that section. If a deed of conveyance be executed and delivered, though not recorded, an attaching creditor or subsequent purchaser without notice of the prior conveyance will have preference of the unrecorded conveyance. This is the rule in Alabama, New Jersey and other States where the lan-

guage of the statute is like that of ours in substance and effect. We will not here further discuss the subject, but refer to Massey vs. Hubbard, and to the notes and citations to Bassett vs. Nosworthy, Vol. 2, part 1, Leading Cases in Equity, Am. Ed. 1877. See also Thompson vs. Maxwell, 16 Fla., 773, 781.

The cross-bill alleges that Thomas conveyed to Drumright by deed dated March 15, 1873, and that Carr was immediately thereafter notified of the same. Carr, in his answer on oath, positively denies having had any notice thereof before he sued out his attachment October 21, 1873. The only evidence on the subject of notice is that of Thomas who says that he told Carr at Athens, Ga., " in July or August, 1873, of the sale to Drumright, and asked him to continue the supervision of the place until Drumright could come over." He says further: " I don't remember who mailed the deed to Florida for record. Suppose it must have been Drumright, as it was his deed and in his possession. Don't know when the deed was sent to Florida for record, but think it was sent *as soon as I learned of Carr's attachment*, and informed Drumright of the same." The acknowledgment of this deed was taken September 22, 1874, in Georgia, and the recording was October 8, 1874.

No other proof was made as to the notice, and no circumstances are shown tending to establish the fact of notice or knowledge on the part of Carr that the land had been sold or conveyed by Thomas to Drumright. It was shown by Thomas that the property had been conveyed to him by his father-in-law for the purpose of aiding Thomas to pay his debts, and that Carr knew of this fact. This latter fact does not tend to show that Carr had notice of the conveyance to Drumright. If Carr knew that the property had been given to Thomas to enable him to pay his debts, Carr doubtless supposed himself as strongly entitled to payment as any other creditor.

The rule is that where the parties proceed to a hearing all the allegations of the answer which are responsive to the bill shall be taken as true, unless they are disproved by evidence of greater weight than the testimony of a single witness. 1 Dan. Ch. Pl. & Pr., Cooper's Ed., 843, and notes; 5 Fla., 478; ib., 528–9; 10 Fla., 9.

The answer having denied in emphatic terms the allegation of notice charged in the cross-bill, and there having been no testimony other than that of the defendant, Thomas, to that fact, we cannot consider it proved that Carr at the time of levying his attachment had notice of the sale or conveyance.

We notice also that in his testimony Thomas does not testify that the deed was in fact executed and delivered on the day it bears date. He speaks of the deed *dated* March 15, 1873, but the record shows that in his examination he always avoids stating *when* it was executed and delivered, though his attention was specially directed to the time of its execution by the cross-interrogatories. This, together with the fact that he testifies that the deed was sent for record when *he notified Drumright* of Carr's attachment, would seem to create a slight cloud of suspicion over the integrity of the transaction.

On the whole case it does not appear that Carr had any notice of the conveyance to Drumright, either express or implied, actual or presumptive, at the time his writ of attachment was levied, and under the statute his lien takes priority to the deed.

The result is that, as the case here stands, there was error in holding that the deed of Thomas to Drumright gave the latter a better title than that of Carr under the sheriff's deed.

The decree must therefore be reversed, and the cause remanded for further proceedings.