OSCAR BASS, OTHERWISE KNOWN AS RULL BASS, *Appellant,*
v. R. H. ALDERMAN, AS TAX COLLECTOR OF OKEECHOBEE
COUNTY, FLORIDA, *Appellee.*

Opinion Filed July 29, 1920.

1. An assessment of range cattle by the Tax Assessor in great-·
er numbers than owned by the alleged owner and for a high-
er valuation than such class of personal property was as-
sessed to other owners in the same county, and without in-
quiry or investigation either as to numbers or value and for
the purpose of discriminating against the ·alleged owner be-
cause he was a non-resident, is void.

2. A herd of cattle upon the range the ownership of which is
protected in some measure by recorded marks and brands
under the law constitutes property of such peculiar char-
acter, that a clear remedy does not exist at law for a tres-
pass, which results in scattering many units of the herd
over the county to be possessed by other owners of cattle in
herds upon common ranges and a practical division of the
mark and brand of the owner.

An Appeal from the Circuit Court for Okeechobee
County; E. B. Donnell, Judge.

Order reversed.

*Johnston & Garrett,* for Appellant;

*George F. Parker,* for Appellee.

ELLIS, J.—This is an appeal from an order sustaining a
demurrer to a bill in chancery and dissolving a temporary
injunction granted upon the application of the complain-
ant restraining R. H. Alderman as Tax Collector and his
deputies, servants and employees from interfering with

the complainant in his ownership and possession of certain stock cattle.

It is alleged in the bill of complaint that the complainant is the owner of certain stock cattle which range in the County of Okeechobee, that the Tax Collector threatens to levy upon the cattle for the payment of taxes on personal property assessed against the complainant for the year 1918.

That the complainant duly returned his cattle for taxation in the Spring of 1918 and estimated the number at 2500, but the Tax Assessor arbitrarily without inquiry or investigation assessed the number of cattle to complainant at 5,000; that such assessment was made for the purpose of discriminating against the complainant and requiring him because he was a non-resident to pay a larger tax than was just and right. That the Assessor admitted to complainant that there was included in the assessment cattle which belonged to other persons all of whom were, although members of the complainant's family, *sui juris* save one. That the complainant did not have during the year 1918 at any time 5,000 head of cattle ranging in Okeechobee County, that he never had at any time during such period more than 2,700 head of cattle. Complainant complained to the Board of County Commissioners of the assessment, but the Board refused to reduce the amount of the assessment although it did offer to reduce the number of cattle named in the assessment to four thousand. That the County Commissioners and Tax Assessor have discriminated against the complainant to his injury, in that other cattle owners in the county have been assessed upon a less number of cattle in proportion to their holdings than was assessed against the complainant.

The bill recites many instances where upon application of the owners the assessment on range cattle was reduced by the Board of County Commissioners from one-third to over 50% but it refused to reduce the complainant's assessment to the number of cattle owned by him. That the valuation of his property as fixed by the Assessor for taxation is higher than like property of other persons in the same situation is valued. That the Tax Collector by selling the complainant's cattle in small quantities will cause irreparable injury to the complainant in that the value of his possessions in that character of property depends upon the recognition by all persons of the ownership by him of all cattle in that county bearing certain marks and brands of which the complainant is exclusive owner. That a "large bulk of his cattle" he has contracted to sell and the cattle are being gathered for sale. That the sale and distribution by the collector of cattle of the complainant in small quantities would make it impossible to keep his marks and brands separate and distinct from those of other persons which would result in financial loss to him which could not be estimated accurately.

A demurrer admitting these allegations of fact was sustained and a restraining order which had been previously granted dissolved.

The allegations of fact admitted by the demurrer show the assessment of the complainant's cattle to have been erroneous, arbitrary, discriminatory and unlawful. To compel him to part with his property upon such an abuse of the taxing power as he alleges in the bill of complaint is to sanction the intentional disregard of the law by those officers charged with the duty of assessing property for taxation.

The Chancellor in his order dissolving the restraining order held that he was without authority to enjoin the sale of personal property for taxes unless there is some "peculiar value attached to it" or the damages resulting irreparable, not that the action as alleged of the Assessor or the Board of County Commissioners was in compliance with the law.

The bill charges an intentional over-valuation of the complainant's property for the purpose of discriminating against him. Complainant alleges that his taxes amounted to $1,788.00, "being a total millage of about thirty-six mills assessed against a number of cattle aggregated on the tax roll of said county as five thousand head." These cattle were alleged to be range cattle.

It is a mere matter of calculation to show that the cattle were valued at about nine dollars and ninety cents per head. In paragraph two of the bill the complaint alleges that like property of other owners was not only assessed for less per head than the complainant's cattle, but the number assessed to the other owners was less than they owned. In one case cattle were assessed at about $6.40 per head; this was reduced to about $2.67 per head. In another case cattle were assessed at about $8.13 per head, the assessment was reduced to about $3.90 per head. In another case cattle were assessed at about $8.33 per head, that assessment was reduced to about $1.67 per head; and several other reductions in about the same proportion were alleged. The good faith of the tax officials and validity of their actions which are presumed are overcome by such allegations, the burden of proof of course is upon the complainant. See City of Tampa v. Kaunitz, 39 Fla. 683, 23 South. Rep. 416; Camp Phosphate Co. v. Allen, 77 Fla. 341, 81 South. Rep. 503.

Whether the owner of this class of property may have relief in equity from the unlawful and invalid assessment of it by the tax officials is the question presented in this case.

The rule is that except in peculiar or extraordinary cases courts of equity have no jurisdiction to enjoin a levy or a trespass upon property or to enforce a mere legal right to it where there is a clear remedy at law. See Wordehoff v. Evers & Bird, 18 Fla. 339.

If the personal property of the complainant is of such peculiar character that a *clear* remedy is not afforded at law for the threatened trespass the complainant would be entitled to his injunction because the bill contains equity entitling the complainant to an annulment of the assessment upon the ground that the alleged action of both the Assessor and Board of County Commissioners constitutes a fraud upon the complainant and their conduct resulted in such an unjust assessment as to violate a fundamental principle of the constitution relating to the exercise of the taxing power. Camp Phosphate Co. v. Allen, *supra;* 26 R. C. L. 460; Odlin v. Woodruff, 31 Fla. 160, 12 South. Rep. 227.

Would a levy upon the complainant's range cattle by the Tax Collector result in such irreparable mischief that the complainant could not be adequately compensated in an action of trespass? If so the injunction should not have been dissolved and the discretion of the Chancellor in not retaining it was abused. In the first place if the property should be levied upon and sold the proceeds of the sale to the amount of the tax levied would be paid partly into the State and partly into the county treasury and could not be recovered by any legal proceeding what-

ever. The inequality of the position of the taxpayer and the collector who is intrusted with such extensive and drastic governmental power is apparent. 26 R. C. L. 462.

Whether the Tax Collector would be liable at all civilly the assessment not appearing to be invalid upon its face need not be determined because in the view we have of the character of the complainant's property the peculiar conditions under which it is held and the circumstances which contribute to its value as a herd render it exceedingly difficult if not impossible to estimate the damage which the complainant would sustain by a sale of small bunches of cattle taken indiscriminately from his herd. Manifestly the value of the cattle sold which is the measure of damages at law, would not compensate him because there would remain the injury resulting from several persons in the same neighborhood or county possessing cattle with his mark and brand the value of which to him, consists in the recognition by every one in the county of his ownership of cattle under such mark and brand. The confusion and possible strife which might result between cattle owners possessing cattle in the same mark and brand could not be estimated in dollars, nor can any one foresee where controversies thus engendered would end. The seeds would be sown for difficulties in every "round up" or every sale of a "bunch of cattle." The owner of the main herd could no longer represent to a prospective purchaser that his herd consisted of so many head because as time passed the increase in the cattle sold would introduce another difficulty in the matter of identification and listing so that as of old between Abram and Lot there would be "strife" between the herdsmen of their cattle.

Under the circumstances the breaking up of the complainant's herd of cattle by the Tax Collector, the scattering of cattle in the complainant's mark and brand over the county to many purchasers, the injury to the value of the mark and brand owned by him and the resultant annoyances and strife which would likely result from conflicting claims through years following is an injury which cannot be compensated in dollars and impossible of estimate. The cattle owned by him in the numbers and under the conditions alleged are of peculiar and extraordinary value.

The order sustaining the demurrer and dissolving the injunction is reversed.

BROWNE, C. J. AND TAYLOR AND WEST, J. J., concur.

WHITFIELD, J., dissents.

WHITFIELD, J., dissenting.—A court of equity should not entertain a bill for an injunction against a tax collector who threatens to seize and sell personal property for the non-payment of taxes, except in rare cases, where the property is peculiarly valuable and cannot be compensated adequately in damages. This is true, even if the officer is acting without lawful authority, as such seizure is a mere trespass, remedial by action at law. Where an injunction is prayed on the ground of irreparable injury, the bill of complaint should allege facts to enable the court to determine whether the injury will be irreparable. A mere general allegation that the injury will be irreparable is not sufficient. When the facts alleged do not show that irreparable injury will be sustained, an injunction should be granted. H. W. Metcalf Co. v. Martin, 54 Fla. 531, 45 South. Rep. 463, 127 Am. St.

Rep. 149. See also Bryan v. Long, 14 Fla. 366; Baldwin v. Tucker, 16 Fla. 258; Crawford v. Bradford, 23 Fla. 404, 2 South. Rep. 782; Odlin v. Woodruff, 31 Fla. 160, 12 South. Rep. 227; City of Jacksonville v. Massey Business College, 47 Fla. 339, 36 South. Rep. 432; Florida Packing & Ice Co. v. Carney, 49 Fla. 293, 38 South. Rep. 602; Williams v. Peeples, 48 Fla. 316, 37 South. Rep. 572; Hendry v. Whidden, 48 Fla. 268, 37 South. Rep. 571; Wordehoff v. Evers, 18 Fla. 339; Finnegan v. City of Fernandina, 15 Fla. 379; King v. Gwynn, 14 Fla. 32; Town of Orange City v. Thayer, 45 Fla. 502, 34 South. Rep. 573; Singer Sewing Mach. Co. of New Jersey v. Benedict, 229 U. S. 481, 33 Sup. Ct. Rep. 942; Bismarck Water Supply Co. v. Barnes, 30 N. D. 555, 153 N. W. Rep. 454, L. R. A. 1916-A 965 and notes.

The allegations as to the peculiar nature and value of the range cattle and of the difficulty of distinguishing separate ownerships of cattle bearing complainant's marks and brands do not show that an irreparable injury would result from a tax sale any more than from a voluntary sale of portions of the range cattle. Fraud is not shown.