W. T. WILLIAMS, J. N. HOLMES; J. R. HENDRY; W. T. WATKINS AND JOHN T. GUNN, as members of the Board of County Commissioners of Hillsborough County, and CHARLIE SILVA, *Appellants*, v. J. S. DORMANY, *Appellee*.

En Banc.

Opinion filed March 10, 1930.

498

*Shackleford, Brown, White & Tillman, C. J. Hardee,* for Appellants;

*E. Paul Martin,* for Appellee.

DAVIS, Commissioner:

The complainant in the court below filed his bill of complaint for an injunction restraining the County Commissioners of Hillsborough County from paying the salaries of an Impounding Officer, and his deputies, provided for under a Special Act of the Legislature and also to restrain the impounding officer from selling certain cattle of the complainant that had been impounded by such officer in a no-fence district in such county. On the day the petition was filed a temporary injunction was granted, restraining the payment of the salary of the Impounding Officer, and also restraining such impounding officer from in any way selling, or offering for sale, impounding or offering to impound, directly or through his assistants any of the cattle or live stock of the defendant until the further orders of the court.

The defendants demurred to the bill upon the following grounds:

"First: That there is no equity in the bill of complaint.

"Second: That the bill of complaint does not state facts sufficient to base equitable relief.

"Third: That the bill of complaint is uncertain, vague and indefinite in its terms.

"Fourth: That the bill of complaint does not state sufficient facts upon which to base equitable decree.

"Fifth: That the said bill of complaint is insufficient and states merely conclusions of law and does not state sufficient facts upon which to base an equitable remedy."

Upon a hearing, the demurrer was overruled, and defendants refusing to plead further, the temporary injunction theretofore granted was made permanent.

From the order overruling the demurrer and making permanent the temporary injunction, the defendants appealed.

Appellants have assigned as error the overruling of the demurrer to the bill of complaint.

It is incumbent upon a complainant to allege in his bill every fact, clearly and definitely, that is necessary to entitle him to relief; and if he omits essential facts therefrom, or states such facts therein as show that he is not entitled to relief in a court of equity, it will be demurrable for want of equity. Pinney v. Pinney, 46 Fla. 559, 35 So. R. 95; Durham v. Edwards, 50 Fla. 495, 38 So. R. 926; Norton v. Jones, 83 Fla. 81, 90 So. R. 854, and many other Florida cases cited in those mentioned above. This rule dovetails with that other rule, that a bill is not entirely

wanting in equity if it states any ground for equitable relief. Orlando v. Equitable &c. Assn., 45 Fla. 507, 33 So. R. 986; Key West W. & C. Co. v. Porter, 63 Fla. 448, 58 So. R. 599, and other cases therein cited; Reinschmidt v. L. & N. R. R. Co., 90 Fla. 334, 106 So. R. 126.

The bill is lacking in allegations that would elucidate matters that are not made clearly to appear, and it is replete with conclusions that justify the criticism that it is not very skillfully drafted; but, for reasons hereinafter set out, we cannot say that it is wanting in equity.

The complainant in the court below, as a basis for the relief prayed for alleged in substance and effect that Chapter 11541, Laws of Florida, Extraordinary Session, 1925, is unconstitutional in that:

(1) Its enforcement in the instant case would deprive the complainant of his property without due process of law, and without just compensation therefor:

(2) That it clothes the impounding officer therein provided for with the power and authority of a trial judge in violation of Section 1, of Article V of the Constitution;

(3) That it would deprive him of his right of exemption under Section 1 of Article X of the Constitution;

(4) That the Extraordinary Session of the Legislature, at which it was passed, was called by Proclamation of the Governor on November 2, 1925, convened on November 17, 1925, and adjourned on November 25, 1925, and that no notice of intention to apply therefor as required by Section 21 of Article III of the Constitution was given;

That Chapter 12864, Laws of Florida, Special Acts, 1927, purporting to amend Said Chapter 11541 as to the title and also as to Section One of the Act, changing in a slight measure, the description of the territory involved, was ineffective to give life and force to the prior act;

That the payment of the salaries of impounding officers and their assistants out of the funds of the county is unlawful inasmuch as Chapter 12846, Laws of Florida, Special Acts, 1927, is in conflict with Section 5 of Article IX of the Constitution, which Section provides that "The Legislature shall authorize the several counties * * * to assess and impose taxes for county * * * purposes, and for no other purpose;" and because it creates the office of impounding officer with two assistants, whose duties are confined to the "no fence" district created by said Act, and to all territory in Hillsborough County which "has been or may hereafter be embraced in a 'no fence' district." The said districts are admitted by the demurrer to be but "a small portion" of the county.

It is alleged that if the "defendant" is not restrained from selling the cattle, complainant will suffer irreparable injury, but no facts are alleged as a basis for this conclusion.

The insolvency of the "defendant" is not alleged.

The objections to the validity of the Chapter 11541, which we have stated in (1) and (2) above, are not well taken.

These objections raised no new questions in this Court. In holding, which we do, that the allegations of the bill in this respect are not sufficient as a basis for injunctional relief, we deem it unnecessary to cite any authority to sustain our action, other than the case of Gill, et al., v. Wilder, 95 Fla. 901, 116 So. R. 870, wherein was involved a statute similar to the one in the instant case, and the Court, in an able opinion by Mr. Justice STRUM, determined the objections raised to the statute adversely to the contention of the objectors.

Relative to the proposition that the complainant will be deprived of his constitutional right of exemption, by the

enforcement of the Act, be it said, there is nothing in the bill to justify a holding that he has such a right, inasmuch as it is not alleged that the complainant is the head of a family. Furthermore, the Constitution only provides for an exemption "from forced sale, under process of any court." In Waller v. Osban, 60 Fla. 268, text 271, 52 So. R. 970, this Court held:

> "Where cattle running at large in a city are taken up and impounded under ordinances authorized by the Legislature, the regulation operates upon the cattle and not upon the owner thereof except as the owner is affected by the disposition made of the cattle."

The taking up and impounding of cattle under a valid ordinance is but the legitimate exercise of a police power necessary to the public in the enjoyment of personal and property rights, to which the private right of property (even if exempt from forced sale under process) must yield.

In Gill v. Wilder, 95 Fla. 901, 116 So. R. 870, this Court held that the ownership of live stock within the State is subject to the State police power, and in the exercise of such power, the State may prohibit letting animals run at large.

The exemption of an animal from seizure or sale will not exempt it from being taken up, impounded and sold. 3 C. J. 184; Wilcox v. Hemming, 58 Wis. 144, 15 N. W. R. 435, 46 A. R. 625.

Under the allegations of this bill, the complainant was not entitled to an order restraining the sale of the cattle upon the theory that he was irreparably injured. "The mere allegation of such injury to the complainant is not sufficient; facts should be alleged to show the exact nature

of the injury." Charlotte Harbor, etc., Ry. Co. v. Lancaster, 70 Fla. 200, 69 So. R. 720.

Then, too, an injunction should not be granted where the remedy at law is adequate. Simmons v. Williford, 60 Fla. 359, 53 So. R. 452; L. & N. R. R. Co. v. Railroad Commissioners, 63 Fla. 491, 58 So. R. 543; Smith v. Powell, 80 Fla. 166, 85 So. R. 654; Bass v. Alderman, 80 Fla. 345, 86 So. R. 244.

In Morgan v. The City of Lakeland, 90 Fla. 525, 107 So. R. 269, it was alleged in the bill of complaint that the City of Lakeland impounded, under its ordinance, on the average of about ten head of complainant's cattle per month; that usually only a small number were impounded at one time and that complainant was compelled to bring many suits at law in the inferior courts to try to prevent his cattle from being disposed of by the city and that there would be an endless number of suits and litigation and that complainant was, and would be, subjected to an enormous expense and cost and loss of time in carrying on such litigation, and the Court very properly held that the bill stated a case within the cognizance of a court of equity on the theory that a court of law did not afford a full, adequate and complete remedy. In the instant case, we have no such state of facts. The owner of the animals has the right to institute replevin proceedings or to sue for damages. 3 C. J. 186; Waller v. Osban, 60 Fla. 268, 52 So. R. 970; Carolina Florida P. Co. v. Maige, 64 Fla. 234, 60 So. R. 346.

The title of said Chapter 11541 reads as follows:

"AN ACT Prohibiting the Owner or Persons Having the Custody and Control of Cattle, Hogs, Horses, Mules, Goats, Sheep, or Other Live Stock from Permitting the Running at Large of Such Cattle, Hogs, Horses, Mules, Goats, Sheep, or Other Live Stock

Within the Following Described Boundaries in Hillsborough County, Florida, to-wit: * * * (Description omitted) and providing for the impounding of same.''

Complainant alleges that the notice provided for in Section 21, Art. III of the Constitution was not given.

In Horton v. Kyle, 81 Fla. 274, 88 So. R. 757, this Court was called upon to pass upon the validity of a local or special Act passed at an extraordinary session of the Legislature, which convened on November 25, 1918; the call therefor having been issued by proclamation of the Governor on November 15, 1918, and in holding that Act was not passed in conformity to the requirements of the Constitution and was, therefore, void, the Court in an opinion by Mr. Chief Justice BROWN said:

"As only twenty-two days elapsed between the date of the proclamation and the adjournment of the Legislature, the constitutional notice could not have been given, and evidence of such notice could not have been established in the Legislature before such bill was passed.''

In Horton v. Kyle, *supra*, the Court was unwilling to extend the doctrine of Stockton v. Powell, 29 Fla. 1, 10 So. R. 688, in which case the Court had before it for consideration a special Act, passed at a regular session of the Legislature.

Upon petition for rehearing, in Horton v. Kyle, *supra*, a majority of the Court held further that the Legislature, by a later Act could not validate the former Act because it was never passed in the Legislature in accordance with the requirements of the Constitution.

It is suggested by appellants that the doctrine of Horton

v. Kyle, *supra*, was seriously questioned in State ex rel. Buford v. Fearnside, 87 Fla. 349, 100 So. R. 256. A careful reading of the two cases will not bear out such a conclusion.

Chapter 11541 was passed at a special session of the Legislature, 1925, and approved November 30, 1925. The special session was convened on the 17th of November, 1925, having been called together by proclamation of the Governor, dated the 2nd day of the same month. As said Chapter 11541 is not a general law and was intended to operate only in a certain locality, it was necessary that notice in conformity with the provisions of Section 21 of Article III of the Constitution be given. The calling of the extraordinary session by the Governor was not known in time to make the required publication of the notice with reference to local or special laws before the approval of the Act in question. It comes within the rule stated in Horton v. Kyle, *supra*. The Act, not having been passed as required by the Constitution, is void.

Chapter 12864, Laws of Florida, Special Acts, 1927, approved June 6, 1927, purports to amend the title to, and also Section 1 of, said Chapter 11541, and changes merely the description of the affected area; but inasmuch as Chapter 11541 never became effective because of noncompliance with constitutional requirements with reference to notice for the passage by the Legislature of local or special bills, Chapter 12864 was, as stated in Horton v. Kyle, *supra*, "ineffectual to put life in the corpse."

It remains for us to dispose of the objection on constitutional grounds made in the bill of complaint to said Chapter 12846, approved May 4, 1927. The title of the Act reads as follows:

"AN ACT Prohibiting the Owner or Person Having the Custody and Control of Cattle, Hogs, Horses,

Mules, Goats or Sheep, from Permitting them Running at Large Within the Following Described Boundaries of Hillsborough County, Florida, to-wit: (Description omitted) Providing a Penalty for the Violation of this Act, and a Procedure to Enforce said Act and for the Collection of any Damage Sustained by the Depredations of said Animals.''

It is admitted by the demurrer that only a portion of Hillsborough County is embraced in the district that is particularly described in the title, and also in Section 1 of the Act. Sections 3, 4 and 5 of the Act provide for the appointment of an impounding officer and two assistants at stated salaries to be paid out of the ''county funds'' and prescribe the duties of such officers, one of which is to take up animals, therein mentioned, found running at large in the territory created as a ''no fence'' district by the Act, ''as well as any other territory in said county which has been or may hereafter be embraced in a 'no fence' district.'' It will thus be seen that the Act purports to create a local ''no fence'' district within the county and also to provide for the appointment of an enforcement officer, not merely for the district thus created, but for other ''no fence'' districts in the county. Can this be lawfully done in this manner, in view of Section 16, Article III of our Constitution, which says: ''Each law enacted in the Legislature shall embrace but one subject and matter properly connected therewith, which subject shall be briefly expressed in the title?''

The title need only express the subject of the Act, and it cannot be improved upon by expressing matter ''properly connected'' with the subject.

It is the rule in this jurisdiction that ''it must be a plain case of violating the requirements of the organic law as to titles of Acts before courts will nullify statutes or por-

tions. thereof as not being within the purpose and scope of the subject as expressed in the title and of matter properly connected therewith;'' but this does not mean that where it clearly appears that matter contained in the body of the Act does not relate to the subject that is expressed in the title, or is not matter properly connected with such subject, it is not the duty of the Court, in appropriate proceedings, to so adjudicate. It has been reiterated time and again by this Court, in one form or another, that the purpose of the constitutional requirement to which we now refer is to avoid fraud or surprise in legislation by means of provisions in bills, of which the titles give no sufficient notice to legislators or to those of the public who may be interested. Because of the great mass of legislation that is offered at every session of the Legislature, it is impossible for legislators to scrutinize every bill for the purpose of determining whether or not it contains matter not germane to the subject expressed in the title, and it, therefore, becomes highly important for the courts to. enforce the restrictions of this mandatory provision of the Constitution ''in all cases coming within the mischiefs intended by it to be arrested.''

Appellant contends that the Act, being under the general police powers of the State, its nature demands that a procedure for enforcement be provided for, or it will be a nullity; that the Legislature, to make this doubly sure, fixed it so that it clearly appeared in the title that the Act provided for ''procedure to enforce'' it.

''A title need not disclose the means and instrumentalities provided in the body of the Act for accomplishing its purpose; where all the provisions are reasonably necessary as means for attaining the object of the Act indicated by the subject which is expressed in the title they are considered as included in

the title as subdivisions of the general subject there stated.'' 25 R. C. L. 858.

The title to the Act now under consideration does not purport to express two distinct subjects. The object of the Act is the creation of a ''no fence'' district in Hillsborough County, and only those provisions ''that are necessary incidents to, or that tend to make effective or to promote the object and purpose of the legislation that is included in the subject expressed in the title of the Act may be regarded as matter properly connected with the subject of the Act.'' Smith v. Chase, 91 Fla. 1044, 109 So. R. 94. If a provision of an act constitutes an essentially different subject that is not properly connected with the subject of the Act, it violates Section 16, Article III, and is inoperative. Smith v. Chase, *supra;* Prairie P. Phos. Co. v. Silverman, 80 Fla. 541, 86 So. R. 508; Carr v. Thomas, 18 Fla. 736; Wade v. A. Lbr. Co., 51 Fla. 638, 41 So. R. 72.

In the instant case, the Act in providing for an impounding officer does not limit his activities to the ''no fence'' district thereby created, nor does it, in providing for such officer's compensation, direct that he be paid by the owners of stock taken up by him, or by deducting same from the proceeds of sale or impounded animals but it fixes the salary of such officer and his two assistants and directs that such salaries be paid out of county funds. Inasmuch as the Act makes it the duty of the impounding officer and his assistants to take up and impound any animals of the kind referred to in the Act found running at large in the said district as well ''as any other territory in said county which has been or may hereafter be embraced in a 'no fence' district'' and provides for the payment of their salaries out of county funds, it is apparent that the Legislature thus sought to make the said impound-

ing officer a county officer with duties to be performed only in "no fence" districts of the county, though potentially his authority is co-extensive with the limits of the county.

The subject of Chapter 12846 is the one that is expressed in the title of the Act; and in determining whether the provisions in the Act creating the office of impounding officer, fixing his salary and prescribing his duties are embraced in the subject and matter properly connected therewith, the subject to be considered is the one expressed in the title of the Act. Ex Parte Knight, 52 Fla. 144, 41 So. R. 786.

When an Act contains provisions, which after yielding all fair intendments and reasonable doubts, are clearly not embraced in the subject of the Act, as expressed in the title or in matter properly connected with that subject, such provisions are inoperative and without effect. Ex Parte Knight, *supra;* Carr v. Thomas, 18 Fla. 736.

The provisions of said Chapter 12846 with reference to the manner and means of payment of the impounding officer and his assistants, and prescribing the duties of such officer and his assistants to be performed outside of the district created by the Act are clearly not covered by the title as required by the Constitution, and are inoperative and without effect. The words, "and a procedure to enforce said Act" in the title of the Act cannot make effective the provisions just referred to.

The foregoing being a statement of our views it is unnecessary to determine whether that provision of Chapter 12846 which directs that the impounding officer and his assistants be paid for their services out of the county funds is in conflict with Section 5 of Article IX of the Constitution.

The court committed no error in temporarily restraining the board of county commissioners from paying or at-

tempting to pay to the impounding officer a salary for his services as impounding officer of Hillsborough County, and in making such injunction permanent; but the court erred in restraining and enjoining the defendant, Charlie Silva, from selling, or offering for sale, or impounding, directly or through his assistants, any of the cattle or live stock of the "defendant." The chancellor, no doubt, inadvertently used the word "defendant" for the word "complainant," but if he had used the latter word, his order would be erroneous, inasmuch as the complainant had a full, adequate and complete remedy at law.

That part of the order that restrains the board of county commissioners from paying or attempting to pay the salary of the impounding officer, is affirmed, but inasmuch as complainant had a full, adequate and complete remedy at law, that part of the order which restrains the said officer from selling or offering for sale or impounding, directly or through his assistants, any of the live stock of the "defendant" is reversed.

The cause is remanded to the lower court with directions to enter an order in conformity with the views expressed herein.

Reversed in part.

PER CURIAM.—The record in this cause having been considered by the Court, and the foregoing opinion prepared under Chapter 14553, Acts of 1929, adopted by the Court as its opinion, it is considered, ordered and decreed by the Court that the order of the Court below should be, and the same is hereby, reversed in part and the cause remanded with directions to enter an order in conformity with the views expressed in the opinion of the Supreme Court.

512

TERRELL, C. J., AND WHITFIELD, ELLIS AND BUFORD, J. J., concur.

STRUM AND BROWN, J. J., dissent in part.

STRUM, J., dissenting in part:

In my opinion, the appointment and payment of the salary of an Impounding Officer to enforce the provisions of Chapter 12846 within the "no fence" district therein defined, is germane to and matter properly connected with the subject expressed in the title of the Act, which expressed subject is in effect an Act prohibiting the owner or custodian of cattle from permitting them to run at large within certain described boundaries and providing a procedure to enforce said Act. If the potential status of such Impounding Officer in other districts which may be created in the future is matter beyond the scope of the title, or if such matter results in duality of subject, it may be eliminated without impairing the remainder of the Act. The only attack made upon the Impounding Officer is in his capacity as an Impounding Officer within the "no fence" district described in the Act.

The proper enforcement of Chapter 12846 may result in general benefit throughout the county, and the payment of the Impounding Officer's salary from general county funds may be a legitimate county purpose, even though the limits of the "no fence" district are not coextensive with the county, upon the same principles that a county road may be paid for from general county funds as a county purpose, though it traverses, and immediately benefits, only a small portion of the county. A golf course may be a legitimate county purpose though located remotely from some portions of the county. A water-front

improvement might be a legitimate county purpose though located on one extreme boundary of the county, and many miles distant from interior parts of the county, and immediately beneficial only to the property adjoining the coast. See Cooley, Taxation (4th ed.) Sec. 89, et seq., Sec. 318.

What is a "county purpose" within the meaning of the Constitution is very largely a legislative question, though subject to judicial review. It may be conceded that "no fence" districts are formed largely for the benefit of the citizens and property within the "no fence" area. At the same time the formation of the district may result in substantial benefit to the remainder of the county. That question is largely for legislative determination. It may be in this case that the limits of the "no fence" area comprise all those rural portions of the county where cattle are kept or pastured, excluding only the urban portions of the county where there is no necessity for the establishment of "no fence" districts. To establish a "no fence" district in the first named area might result in preventing cattle from straying from those areas into built-up urban areas, so that the latter will benefit from the establishment of the "no fence" district. These and allied questions are primarily for legislative determination, and there is nothing in this record to justify judicial interference in this instance.

In my opinion, the decree appealed from should be wholly reversed. I concur in all that portion of the opinion which leads to a reversal. From the remainder, I dissent.

BROWN, J., concurs.