170 P.2d 297

**HUGHES v. CITY OF PHOENIX et al.**

**No. 4796.**

Supreme Court of Arizona.

June 24, 1946.

Thomas O. Marlar, of Phœnix, for appellant.

Richard Minne, City Atty., and William C. Fields, Asst. City Atty., both of Phœnix, for appellees.

LaPRADE, Judge.

This appeal involves the validity of Ordinance No. 3907 of the City of Phœnix, the title of which reads as follows:

"Ordinance No. 3907.

"An ordinance prohibiting the parking or standing of motor vehicles within the city in violation of the ordinances of the city regulating the same, declaring such illegal parking to be a nuisance and a menace to the safe and proper regulation of traffic, providing for the removal of such vehicle and its retention by the chief of police until the payment of removal and storage charged; and declaring an emergency."

Section 1 of the act prohibits the parking of any vehicle in violation of the ordinances of the City of Phœnix regulating the standing, or parking, of vehicles.

Section 2 of the act provides, in part, that any unoccupied vehicle found violating any provision of the ordinances relating to parking is a nuisance and a menace to the safe and proper regulation of traffic, and authorizes the chief of police to seize and impound it. The removal charges provide for a fee of $4, plus fifty cents a day for each day the vehicle is kept in custody.

Inferentially the appeal also questions the validity of the parking meter ordinance of the City of Phœnix, numbered 2546, the title of which reads as follows:

"Ordinance No. 2546.

"An ordinance relating to traffic and regulating the use of the public streets and highways of the city of Phœnix; providing for the installation and use of parking meters; designating parking meter zones; authorizing the city manager to enter into a contract for the payment of parking meters and for repairs and supply parts therefor from the revenues obtained from the operation of parking meters and authorizing and setting aside of all or part of said receipts as a special fund for such payment; designating the use of the funds derived from such parking meters after payment thereof has been made; providing for the enforce-

ment hereof; providing penalty for violation hereof; and providing that the invalidity of a part of this ordinance shall not affect the validity of the remainder; and declaring an emergency."

The various provisions of the ordinance are germane to the title. **The act** authorized the installation of parking meters, fixes a time limit and provides for a charge of five cents in the meters. The ordinance also designates certain streets of the City of Phœnix where the meters shall be installed. The appellant parked his car in a meter zone in violation of the ordinance in that he failed to deposit a nickel in the meter or left it in the parking place long after the parking time had expired. The appellee, Jerald McAlpin, a police officer, of the city, observed the motor vehicle so illegally parked and pursuant to the provisions of the ordinance first above referred to, caused the same to be removed from the street and taken for storage in the custody of the chief of police.

The appellant refused to pay the removal and storage charges, or impounding fees, prescribed in the ordinance, and filed this action for replevin on the succeeding day. Replevin bond was posted and the appellant's car immediately released.

After the pleadings were settled, the appellees duly filed their motion for summary judgment based on the affidavit of appellee McAlpin containing the allegations of fact concerning the seizure of the vehicle hereinbefore set forth. The affidavit was never controverted by the appellant who subsequently filed his motion for judgment on the pleadings. Both motions were heard on the same day by stipulation, the court granting appellees' motion for summary judgment and denying appellant's motion for judgment on the pleadings. Thereafter, the appellees having elected to retake possession of the vehicle and retain the same until the removal and storage charges incurred by its impounding under the provisions of Ordinance No. 3907 were paid, and the court having so decreed, the appellant formulated this appeal.

Appellant has set forth a number of assignments of error and propositions in support thereof. We shall take cognizance only of those that we deem to have any merit and worthy of the attention of this court. One of these assignments is to the effect that "The court erred in holding that the automobile and medical instruments of a licensed physician and surgeon were subject to execution."

The appellant argues at length that a physician's automobile is an instrument and as such under subsection 3 of Section 24-601, A.C.A.1939, exempt from execution or attachment. Such a motor vehicle is not exempted by the provisions of subsection 3 of Section 24-601, supra, cited by the appellant. It is, however, expressly exempted by the provisions of subsection 10 of that section, which expressly provides:

"24-601. List of property exempt.—The following property shall be exempt from execution, attachment or sale on any process issued from any court:

\*    \*    \*    \*    \*    \*

"10. \* \* \* or one (1) motor vehicle, used by a surgeon, physician, constable or clergyman in the legitimate practice of his profession, \* \* \*."

■ The fact that a physician's motor vehicle is free from seizure and sale under legal process for the payment of his debts does not permit him to disobey laws which are designed to carry out a program for the safe use of the streets of a city by motor vehicles and automobiles. To adopt the construction contended for by appellant would permit any physician, surgeon, constable or clergyman, to park his motor vehicle in the middle of the streets or highways, on the sidewalks, or on the parkways, in violation of city ordinances or state laws, and the proper officers would have no authority to remove it. It would permit such owners to refuse to pay their state license fees, and would prevent the highway officials from seizing the vehicles under the state statutes until such fees were paid. It would permit the lawyer to establish his library on the street, the printer to run his shop on the sidewalk, the music teacher to give lessons on public thoroughfares, or the farmer to permit livestock to run at large throughout the public ways.

We have not been cited to any authority to the effect that such an exemption statute has been construed to permit the commission of a nuisance and to prevent the proper officer from abating it. The great weight of authority, however, is to the effect that personal property exemption laws do not prohibit the impounding of those items of personal property which are exempted from seizure or forced sale for debt for the violation of a valid ordinance adopted under the police power of the municipality. Typical of the decision is the holding in Williams v. Dormany, 99 Fla. 496, 126 So. 117, on page 120, where the court states:

"Relative to the proposition that the complainant will be deprived of his constitutional right of exemption, by the enforcement of the act, be it said there is nothing in the bill to justify a holding that he has such a right, inasmuch as it is not alleged that the complainant is the head of a family. Furthermore, the Constitution only provides for an exemption 'from forced sale, under process of any court.' In Waller v. Osban, 60 Fla. 268, text 271, 52 So. 970, 971, this court held:

" 'Where cattle running at large in a city are taken up and impounded under ordinances authorized by the Legislature, the regulation operates upon the cattle, and not upon the owner thereof, except as the owner is affected by the disposition made of the cattle.'

"The taking up and impounding of cattle under a valid ordinance is but the legitimate exercise of a police power necessary to the public in the enjoyment of personal and property rights, to which the private right of property (even if exempt from forced sale under process) must yield.

"In Gill v. Wilder, 95 Fla. 901, 116 So. 870, this court held that the ownership of live stock within the state is subject to the state police power, and, in the exercise of such power, the state may prohibit letting animals run at large.

"The exemption of an animal from seizure or sale will not exempt it from being taken up, impounded, and sold. 3 C.J. 184; Wilcox v. Hemming, 58 Wis. 144, 15 N.W. 435, 46 Am.Rep. 625."

It appears that if the ordinances hereinbefore set forth are valid, having been enacted in the legitimate exercise of the police power, the appellant's claim of exemption must fail, and we so hold.

█ Appellant's other assignments of error go to the proposition that the City of Phoenix does not have the fee simple ownership of the streets and old townsite of Phoenix; that the city cannot make commercial use of the streets for revenue purposes; and, that the city was without authority to rent or charge a fee for parking space. There is no occasion for us here to be concerned with the genealogy of title or seizin of the City of Phoenix in and to its streets. Suffice it to say that

the street in question, where the appellant's car was parked, has been a public thoroughfare for some seventy-two years, by grant, dedication or common usage, and subject at all times to reasonable regulatory control.

█ This court has previously had occasion to pass upon the validity of Ordinance No. 2546 (the parking meter ordinance of the City of Phoenix). In the case of City of Phoenix v. Moore, 57 Ariz. 350, 113 P.2d 935, 937, this court reviewed similar ordinances and cases from other jurisdictions involving the constitutionality of such ordinances. Suffice to say that in that case the court said: " * * * Clearly, the ordinance has for its purpose the regulation of a perplexing problem to cities and towns, created largely by the advent of motor vehicles." The court further held that the ordinance was a regulatory measure and not a revenue measure, and a legal, subsisting and valid ordinance. Upon the authority of the Moore case we hold that the so called "parking meter ordinance" is constitutional.

█ The next question to be determined, then, is whether Ordinance No. 3907, declaring unoccupied vehicles found violating the provisions of the ordinances of the City regulating the standing or parking thereof, to be nuisances and a menace to the safe and proper regulation of traffic, and providing for the impounding thereof, is valid. So far as we have been able to ascertain, only two states have had occasion to pass

upon such ordinances, and each has ruled in favor of their validity. In Jackson v. Copelan, 50 Ohio App., 414, 198 N.E. 596, 599, the court had before it the constitutionality of a similar ordinance. In that case an automobile had been seized and impounded for a violation of a parking ordinance. The court concluded that the city had no common law lien for the costs incidental to the removal and storage of the automobile. We approve of the reasoning of the court in this case and its conclusions where it said:

"* * * The city is entirely dependent upon the ordinance for its authority to hold the automobile. The ordinance must, in consequence, be an expression of the police powers conferred upon the city. Is the due process clause of the Constitution infringed? There is a paucity of authority directly bearing upon the question. Our search has discovered but one authority directly upholding a similar ordinance.

" 'Ordinance providing that owner of vehicle impounded for being improperly parked must pay pound fee before regaining possession thereof held not unconstitutional as depriving owner of property without due process.' Steiner v. City of New Orleans, 173 La. 275, 136 So. 596, paragraph two of the syllabus.

"This case was followed by the Supreme Court of Louisiana in the case of Cornman v. Conway, Supervisor of Public Accounts, 178 La. 357, 358, 151 So. 620. We have found no authority directly contra."

The court concluded that the city had complied with its duty to police and regulate the use of its streets and that it was entitled to impound the car and demand reasonable compensation for the cost incurred.

■ The City of Phoenix, under its Charter and under the general laws of the State of Arizona, has the right to define nuisances and abate them, and to regulate the use of streets and alleys and remove encroachments or obstructions therefrom. See Section 2, Chapter 4 of the Charter of the City of Phoenix; Sec. 16-601, A.C.A. 1939; Sec. 66-114, (Id.).

■ We conclude that the City of Phoenix has complied with the duties imposed upon it by the statutes of the State of Arizona, and should be entitled to remove motor vehicles which are illegally parked and retain possession thereof until it is compensated for the charges incident thereto.

The judgment is affirmed.

STANFORD, C. J., and MORGAN, J., concur.