287 So.2d 307 (1973)
HOUSING AUTHORITY OF the CITY OF ST. PETERSBURG, Appellant,
v.
CITY OF ST. PETERSBURG, Appellee.
No. 43046.
Supreme Court of Florida.
November 21, 1973.
Rehearing Denied January 23, 1974.
*308 Richard T. Earle, Jr., of Earle, Earle & Bryson, St. Petersburg, for appellant.
Michael S. Davis, Asst. City Atty., for appellee.
BOYD, Justice.
This cause is before us on appeal from the Circuit Court, Pinellas County. The trial court, in its final judgment, passed upon the validity of Chapters 63-557 and 72-270, Laws of Florida, giving this Court jurisdiction of the direct appeal under § 3 of Article V of the Constitution of the State of Florida, F.S.A.
The facts of the case are as follows:
In 1937, the Legislature enacted Chapter 421 of the Florida Statutes, F.S.A.,[1] creating housing authorities in all municipalities having a population in excess of five thousand people. In 1941, this statute was amended[2] by reducing the population requirement to 2,500. Also, in 1941, similar housing authorities were created[3] in all counties in the state. These housing authorities were given the power to "prepare, carry out, acquire, lease and operate housing projects to provide for the construction or re-construction, improvement, alteration, or repair of any housing project or part thereof." The 1937 Act, as amended, provided that the housing authority could not transact any business or exercise any of its powers until or unless the governing body of the respective city, by proper resolution, declared that there was a need for such an authority to function in said city. In November of 1937, the St. Petersburg City Council issued such a resolution.[4]
The Florida Legislature enacted Chapter 63-557[5] and 72-270[6] Laws of Florida, both of which acts, by their language, were applicable only to Pinellas County, and restricted the operation of the 1937 law, as amended, by providing that the housing authority within Pinellas County could construct or contract to construct housing projects only upon the approval of a majority vote in a referendum election to be held in the area for which the housing authority *309 is created. It was stipulated that notice of intention to enact Chapter 63-557 was not published, and that notice of intention to enact Chapter 72-270 was also not published.[7]
Appellant contends that if this Court finds, as it urges, that these two laws were special laws, such notice of intention to enact and subsequent publication was required by Article III, Section 21, of the Constitution of 1885,[8] and Article III, Section 10, of the Constitution of 1968,[9] respectively.
Appellant alleges that it desired to construct public housing in St. Petersburg, pursuant to powers granted to it by the 1937 Law, but was unable to secure the necessary financing to acquire land, and the financing necessary to construct such public housing, until such time as the referendum concerning the same had been successfully held. The Appellee has failed to hold a referendum on any proposed construction of public housing in the City of St. Petersburg, and Appellant contends that if the Appellee had called such a referendum, it would be incumbent upon the Appellant to bring an action to enjoin the same; or, in the event a referendum was held and the proposed housing defeated, to bring an action to have the referendum declared null and void.
As a result of the foregoing, Appellant alleges that it has been, and will be, completely frustrated in carrying out and performing the duties and responsibilities imposed upon it by the 1937 Law until there is an adjudication as to the constitutionality of Chapter 63-557 and 72-270.[10]
*310 The position of the Appellee, succinctly stated, is that Chapter 63-557 and 72-270 are general laws which were properly enacted by the Legislature. While the Appellee admits that notice of intention to enact was not published for either statute, the Appellee contends that since these were general laws, such was not required, and that, therefore, the laws are constitutional.
The instant case arose below when Appellant filed its Complaint for declaratory relief determining the validity of Chapters 63-557 and 72-270, Laws of Florida, and for other relief, and the Appellee filed its Answer. The Attorney General filed a Motion to Intervene and intervention was allowed. Appellant filed its Motion for Summary Judgment attaching thereto various exhibits. At the hearing on Appellant's Motion for Summary Judgment, the Appellee orally moved for Summary Judgment. At the conclusion of the Hearing, the Trial Court entered its Judgment denying Appellant's Motion for Summary Judgment and granting the Appellee's Motion for Summary Final Judgment.
This is an appeal from that Final Judgment, which held that Chapters 63-557 and 72-270, General Acts of Florida, were enacted in accordance with Article III, Section 21 of the Constitution of 1885, and Article III, Section 10 of the Constitution of 1968, respectively.
We hereby reverse the judgment of the trial court, for reasons which will be set out below.
There is no factual question as to the publication of the notice of intent to enact either Chapter 63-557, Laws of Florida, or Chapter 72-270, Laws of Florida. Appellant alleged and Appellee admitted that such notice was not published. Further, attached to the Motion for Summary Judgment was the certification of the Secretary of State reflecting that no proof of publication or affidavits are attached to said original laws on file in his office.
The sole question on this appeal is whether these two Acts are special acts falling within the purview of the constitutional restrictions requiring publication of notice of intent to seek enactment.
Neither the Constitution nor general law defines the term "special laws" as used in the Constitution and general law. This Court has, in the past, stated the basic reasons for the constitutional restriction, and has defined the type of law subject thereto. In Milner v. Hatton,[11] we set out the purpose of the constitutional restriction as follows:
"... . It therefore fails to comply with the requirements of either the Constitution or the statute, one of the purposes of both of which was to draw certain safeguards around the passage of local and special legislation by which the people of the locality to be affected would be given fair notice of the intention to get such legislation adopted, and of the substance thereof, and that the legislative journals should affirmatively show that such fair notice had been given as to the particular bill. In order to make this amendment to the constitution effective for the beneficent purpose for which it was evidently adopted by the people of this state, the constitutional requirements must be carefully complied with by the legislative body and fairly and thoroughly enforced by the courts."[12]
In Carter v. Norman,[13] we defined local and special laws as:
"... . A statute relating to particular subdivisions or portions of the state, or to particular places of classified locality is a local law. A statute relating to particular persons or things or other particular subjects of a class is a special law."[14]
*311 There are numerous other cases holding specific acts subject to the constitutional restrictions on passage of special laws. The great bulk of these cases involved so-called population acts applicable to a single county which was not described by name, but instead by population bracket into which it alone fell. This Court has uniformly held these acts invalid where there obviously is no reasonable basis for the classification.
When Chapters 63-557 and 72-270 are considered in the light of the purpose of the constitutional restriction and the definitions of special or local laws as determined by this Court, it is apparent that they are special laws falling within the constitutional restrictions and requiring publication of notice of intent to enact. They restrict, in Pinellas County only, the powers granted housing authorities throughout the entire state, thereby creating in Pinellas County housing authorities with powers different from all others. The people of Pinellas County were afforded no notice of the intent to enact these restrictions on housing authorities located within their county only.
It makes no difference that said laws were purportedly enacted under the guise of being general laws. This was not a novel procedure by the legislature, but had been attempted on numerous other occasions, all of which ultimately failed when subjected to judicial scrutiny. In State ex rel. Baldwin v. Coleman,[15] we admonished:
"But even though a bill is introduced and treated by the Legislature as a general law, if the bill in truth and in fact is clearly operative as a local or special act and the court can so determine from its obvious purpose or legal effect as gathered from its language or its context, this court will so regard it and deal with it as a local or special act in passing on its validity, regardless of the guise in which it may have been framed and regardless of whether the particular county or locality intended to be affected by it is in terms named or identified in the act or not."[16]
It is apparent that if Chapters 63-557 and 72-270 are special laws and were purportedly enacted in a manner prohibited by the Constitution of Florida, they are a nullity. We have summarily so held in numerous cases.[17]
Therefore, Chapters 63-557 and 72-270, without any notice of intention to apply therefor having been published as required by the Constitution, and not containing a referendum, these Acts are nullities.
Accordingly, the final judgment of the trial court is reversed, and the cause remanded to the trial court with instructions to enter a Summary Final Judgment on behalf of the Appellant as to the issue of the constitutionality of Chapters 63-557 and 72-270, Laws of Florida.
It is so ordered.
CARLTON, C.J., and ERVIN, ADKINS and DEKLE, JJ., concur.
McCAIN, J., dissents with opinion.
McCAIN, Justice (dissenting):
I must respectfully dissent.
While the majority presents a logical argument on the discourse between general and special laws, as it pertains to the housing authority in Pinellas County, nevertheless several compelling reasons lead me to believe that a "straight" reversal is in error.
First, obviously a crowded population and modern business conditions have come *312 to stay with us in large units. Such is the subject under review. Nevertheless, this should not preclude a cool but steadfast determination in such a case to regulate this condition by compliance with safeguards protecting the interests of the people as a whole. Such also is this case.
I am and have advocated to be a believer in constitutionalism, however I have no theory or desire to thwart securing the rights of the people to rule themselves, under law, and for them to provide for their social, industrial and economic well being.
My dissent is not necessarily a difference of principle, but only the expression that every person must be free to be left to logical combat. At any call, every man should stand by the standard of law and resist any invasion of public order as a matter of his committed personal concern over our country and state.
In the spirit of this gift, I accept it and will now proceed with an otherwise nonprevailing opinion.
Ability, honesty, integrity, character and enterprise, or the lack of it, is discovered under its mantle.
The majority speaks in terms of "general law" or "special law" or "act". However, this is not necessarily dispositive of the issue ... even though I may ultimately agree. Cases are cited by the majority with which I don't take issue. Nevertheless, the full facts are not disclosed.
The trial judge when entering summary judgment upholding the validity of the act in question cited State ex rel. Gray v. Stoutamire, 1938, 131 Fla. 698, 179 So. 730, holding in effect the following:
"The terms `special or local laws' as used in the Constitution refer ordinarily to law relating to entities, interests, rights, and functions other than those of the State, since the organic law does not contemplate or require previous publication of notice of proposed laws for the exercise of State powers and functions though they may be more or less local or special in their operation or objects...." (Emphasis added.)
See also State ex rel. Cohen v. O'Neal, 1930, 100 Fla. 1277, 131 So. 165, and State ex rel. Oglesby v. Hand, 1928, 96 Fla. 799, 119 So. 376, where certain regulations were brought within the rule of Stoutamire, thus permitting a review by the trial judge to determine the nature and purpose of the bill, i.e., general or special.
Such should be done here through an evidentiary hearing, as evidenced by the Stoutamire cite. Otherwise previous decisions will be buried beneath the sole of a heretofore solid kindred of opinions won on many battlefields.
One final comment. In every case there are certain facts "apparently" distinct by themselves  never confounded by gifts or thefts. Nevertheless, they are open to analysis, observation, induction and deduction, and subject to the enduring test of "principle". This case obviously should be put to the test. Thereby the advantage of experience and the results and reasons of human actions can be weighed and balanced on the scales of justice.
Accordingly, I would remand for rehearing in keeping with the foregoing conclusion.
NOTES
[1] Chapter 17981, Laws of Florida, 1937.
[2] Chapter 20219, Laws of Florida, 1941.
[3] Chapter 20220, Laws of Florida, 1941.
[4] City of St. Peterburg Res. 155/33 (1937).
[5] Now Section 421.53, Florida Statutes, 1971, F.S.A.: "Housing authority, Pinellas County; limitation.  Any housing authority created within Pinellas County by § 421.04 shall construct or contract to construct any housing project only upon the approval by a majority of the freeholders voting in a referendum election to be held in the area for which the housing authority is created. Such election shall be called by the governing body of such area."
[6] Now Section 421.53, Florida Statutes, 1971, F.S.A. (1972 Supp.): "Housing authority, Pinellas County; limitation.  Any housing authority created within Pinellas County by § 421.04 shall construct or contract to construct any housing project only upon the approval by a majority of the electors voting in a referendum election to be held in the area for which the housing authority is created. Such election shall be called by the governing body of such area."
[7] In addition, the following certification by the Secretary of State appears in the Record:

"I, RICHARD (DICK) STONE, Secretary of State of the State of Florida, do hereby certify that there are no Proofs of Publication or Affidavits attached to the following original laws on file in this office:
"Chapter 63-557 (Senate Bill No. 1401), Acts of 1963, and Chapter 72-270 (Senate Bill No. 1099), Acts of 1972."
[8] "... . [N]o local or special bill shall be passed, nor shall any local or special law establishing or abolishing municipalities, or providing for their government, jurisdiction and powers, or altering or amending the same, be passed, unless notice of intention to apply therefor shall have been published in the manner provided by law where the matter or thing to be affected may be situated, which notice shall be published in the manner provided by law at least thirty days prior to introduction into the Legislature of any such bill. The evidence that such notice has been published shall be established in the Legislature before such bill shall be passed, and such evidence shall be filed or preserved with the bill in the office of the Secretary of State in such manner as the Legislature shall provide, and the fact that such notice was established in the Legislature shall in every case be recited upon the Journals of the Senate and of the House of Representatives: Provided, however, no publication of any such law shall be required hereunder when such law contains a provision to the effect that the same shall not become operative or effective until ratified or approved at a referendum election to be called and held in the territory affected in accordance with a provision therefor contained in such bill, or provided by general law."
[9] "No special law shall be passed unless notice of intention to seek enactment thereof has been published in the manner provided by general law. Such notice shall not be necessary when the law, except the provision for referendum, is conditioned to become effective only upon approval by vote of the electors of the area affected."
[10] The following affidavit appears in the Record:

"I, EDWARD M. ROGALL, am the Board Chairman of the Housing Authority of the City of St. Petersburg, Florida. The Housing Authority of the City of St. Petersburg, desires to construct public housing in the City of St. Petersburg. This public housing will provide needed living quarters for some of the residents of the City who will be displaced from their homes as a result of the construction of Interstate-75 in the City of St. Petersburg, Florida.
"The Housing Authority has received a reservation for 100 units of public housing from the United States Department of Housing and Urban Development. The funds will not be forthcoming until a referendum of the electors is held or until Section 421.54, Florida Statutes [F.S.A.], is declared unconstitutional. To date the City of St. Petersburg has not held a public referendum on this proposed construction of public housing in the city."
[11] 100 Fla. 210, 129 So. 593 (1930).
[12] 129 So. at 596.
[13] 38 So.2d 30 (Fla. 1948).
[14] Id. at 32.
[15] 148 Fla. 155, 3 So.2d 802 (1941).
[16] 3 So.2d at 803. See also Carter v. Norman, supra, note 13.
[17] See, e.g., City of Hialeah v. Pfaffendorf, 90 So.2d 596 (Fla. 1956); Williams v. Dormany, 99 Fla. 496, 126 So. 117 (1930).