406 So.2d 1132 (1981)
DESERET RANCHES OF FLORIDA, INC., Petitioner,
v.
ST. JOHNS RIVER WATER MANAGEMENT DISTRICT, Greater St. Johns River Basin, et al., Respondents.
No. 80-1063.
District Court of Appeal of Florida, Fifth District.
August 12, 1981.
On Rehearing December 2, 1981.
*1134 Mary Patricia C. Fawsett of Akerman, Senterfitt & Eidson, Orlando, for petitioner.
Egerton K. Van Den Berg of Van Den Berg, Gay & Burke, P.A., Orlando, and Herbert M. Webb, III, Gainesville, for respondents St. Johns River Water Management District and Greater St. Johns River Basin.
Jim Smith, Atty. Gen., and Linda C. Procta, Asst. Atty. Gen., Tallahassee, for respondent Dept. of Revenue.
FRANK D. UPCHURCH, Jr., Judge.
Deseret Ranches of Florida, Inc. (Deseret) petitions for a writ of common law certiorari to review a non-final order entered by the Circuit Court for Osceola County granting partial summary judgment in favor of the defendants below, the St. Johns River Water Management District (the District) and the Greater St. Johns River Basin (the Basin). Deseret owns land in Orange, Seminole and Osceola counties. It filed suit for declaratory relief on behalf of all persons against whom ad valorem taxes and permit application fees were assessed in Orange, Osceola, and Brevard counties by the District. It contended that the Greater St. Johns River Basin, created by Chapter 77-382, Laws of Florida, was unconstitutionally established, that the District is impermissibly levying state ad valorem taxes, and that the District has been improperly spending ad valorem tax revenues for its administrative and regulatory functions.
Petitioner seeks to invoke the jurisdiction of this court pursuant to Florida Rule of Appellate Procedure 9.030(b)(2)(A).[1] In Colonial Penn. Ins. Co. v. Blair, 380 So.2d 1305 (Fla. 5th DCA 1980), we enunciated the three prerequisites necessary to invoke common law certiorari:
(1) the order sought to be reviewed does not conform to the essential requirements of law;
(2) material injury will result from the order; and
(3) remedy by appeal is inadequate.
In Janet Realty Corp. v. Hoffman's Inc., 154 Fla. 144, 17 So.2d 114, 117 (1944), the Florida Supreme Court explained that common law certiorari is proper where:
[T]he judgment of the Circuit Court is rendered without or in excess of its jurisdiction; where [it] is a palpable miscarriage of justice; or where the result of such judgment would constitute a substantial injury to the legal rights of the petitioner; or where the judgment... is illegal or essentially irregular and violative of established principles of law, the violation of which by the judgment has resulted, or reasonably may and probably will result, in substantial injury to the legal rights of the petitioner, and for which no other adequate remedy is afforded by law.
Petitioner contends that it will suffer material injury and that remedy by appeal is inadequate because respondents will continue to levy taxes and make expenditures in an unlawful manner. The mere possibility that the trial court is committing error which may require reversal of the case on appeal does not necessarily mean that appeal after a final judgment is inadequate. See Haddad, The Common Law Writ of Certiorari in Florida, 29 Fla.L. Rev. 207 (1977). See also Siegel v. Abramowitz, 309 So.2d 234 (Fla. 4th DCA 1975). However, if the trial court's order is one which would place the complaining party "beyond relief," then appeal has been found to be an inadequate remedy. See Boucher *1135 v. Pure Oil Co., 101 So.2d 408 (Fla. 1st DCA 1957).
In the instant case, petitioner may be viewed as being "beyond relief" if prompt review by certiorari is denied because respondents will continue to levy taxes and make expenditures in an allegedly unlawful manner. While it would be possible to pay the taxes under protest and recover those unlawfully collected, the challenge to respondents' expenditures is on a different footing.[2]
Additionally, where the trial court passes upon the constitutionality of a state statute which is vital to disposition of the cause, as occurred here, and the cause involves a question of great public interest, review by certiorari may be appropriate. See Burnsed v. Seaboard Coastline Railroad Co., 290 So.2d 13 (Fla. 1974). That case involved partial summary judgment whereby the trial court held a state statute to be unconstitutional. The Florida Supreme Court exercised its discretion to review the trial court's action.
The Florida Supreme Court also has emphasized the need for a complete and expeditious remedy where a taxpayer seeks to procure refund of taxes. State v. Green, 88 So.2d 493 (Fla. 1956). In Green, the petitioner sought via mandamus to force the state comptroller to refund to it taxes it had erroneously paid. The state argued that this was an inappropriate remedy but the court declared:
In this country where the citizen has paid good money illegally and has an election of remedies for recovery, he should be permitted to employ the most complete and expeditious remedy possible to recover; whether this be mandamus, certiorari or other complete remedy is not material.
88 So.2d at 495.
Since the preliminary elements of certiorari jurisdiction are present, we shall proceed to determine whether the trial court's order departed from the essential requirements of law.
In 1976, the voters approved an amendment to article VII, section 9, Florida Constitution, which provided in part that special districts may be authorized by law to levy ad valorem taxes for their respective purposes. This authorization for water management purposes was limited to 1.0 mill over most of the state including the areas which this case encompasses.
Prior to this, the Legislature had adopted the Florida Water Resources Act of 1972,[3] chapter 373, Florida Statutes. Section 373.069(1), Florida Statutes (1979), designates five water management districts and provides the boundaries for each. Section 373.023, Florida Statutes (1979), provides that all waters within the state are subject to regulation under chapter 72-299, unless specifically exempted.
Chapter 76-243, Laws of Florida, provided for the creation of basins within the districts. See § 373.0693(1), Fla. Stat. (1979). It also amended section 373.503 and authorized the various governing boards of the districts, when appropriate, to separate the taxes levied into a millage necessary for the purposes of the district and a millage necessary for financing basin functions specified in section 373.0695. The total millage for district and basin purposes within the St. Johns River Water Management District was limited to 0.375 mill. Chapter 76-243 additionally transferred petitioner's lands which had previously been located entirely within the South Florida Water Management District (SFWMD) into the St. Johns River Water Management District. It also created the Oklawaha Basin, the boundaries included four counties in the St. Johns River Water Management District.
Petitioner challenges the constitutionality of chapter 77-382 enacted in 1977. The effect of this law was to allow respondent District to levy an additional assessment of ad valorem taxes on lands within its jurisdiction *1136 which were not included in the Oklawaha Basin. This enactment designated the area of the District, less those areas in the Oklawaha Basin, as the Greater St. Johns River Basin (the Basin). It also provided that the governing board of the District would serve as the governing board of the Basin. In this respect, the Greater St. Johns River Basin is unique. In all other basins, the governing boards are composed of representatives from each of the included counties in the basin. The members of the governing boards of both the District and the Basin are not elected but rather are appointed by the governor subject to approval by the legislature.
Chapter 77-382 was enacted as a general law. Notice was not given as required for local or special laws by article III, section 10, Florida Constitution, and no referendum was held. Petitioner contends that notice was required because chapter 77-382, in creating the Basin, was a special or local law of limited application and subjected lands to taxation without the required notice.
Petitioner also contends that the St. Johns River Water Management District is, in effect, a state agency levying a prohibited ad valorem tax in violation of article VII, section 1(a) of the Florida Constitution, which provides that "no state ad valorem taxes shall be levied upon real estate or tangible personal property." Petitioner reasons that the Department of Environmental Regulation has delegated practically all of its powers regarding enforcement and administration of state policy and is also specifically empowered by section 373.026 to exercise all powers of the St. Johns River Water Management District and to review, rescind or modify any policies, rules, regulations and orders of the District except those rules involving internal management. Petitioner submits that the Department effectively controls all aspects of the operation of the District.
Petitioner's final challenge is that the District has been spending ad valorem tax revenues for regulatory and administrative purposes and that this violates the provisions of chapter 373 as a matter of law. We shall treat these issues seriatim.
Petitioner alleges that chapter 77-382, Laws of Florida, which amended section 373.0693(8), Florida Statutes, to establish the Greater St. Johns River Basin, was a special act necessitating the notice requirements of article III, section 10, Florida Constitution, and section 11.02, Florida Statutes.[4] Respondents concede that chapter 77-382 was enacted without the notice required for a local or special act. The crucial question then is whether chapter 77-382 was a general or special act.
Respondents assert that the legislature adopted a general framework for creation of basins in chapter 76-243. This act, which transferred petitioner's lands to the St. Johns River Water Management District and created numerous basins around the state, including the Oklawaha Basin, also amended section 373.0693(1) to read:
Any areas within a district may be designated by the district governing board as subdistricts or basins. The designation of such basins shall be made by the district governing board by resolutions thereof. The governing board of the district may change the boundaries of such basins or create new basins by resolution. No subdistrict or basin in the St. Johns Water Management District other than established by this act shall become effective until approved by the Legislature.

Because the Basin was created via this statutory framework by chapter 77-382, respondents contend that it was merely an addition to the general statutory plan governing water management and is not a special or local law.
The purpose behind requiring notice of intention to enact special legislation is to:

*1137 [D]raw certain safeguards around the passage of local and special legislation by which the people of the locality to be affected would be given fair notice of the intention to get such legislation adopted, and of the substance thereof.
Housing Authority v. City of St. Petersburg, 287 So.2d 307, 310 (Fla. 1973). See also Dickinson v. Bradley, 298 So.2d 352 (Fla. 1974).
In Housing Authority v. City of St. Petersburg, the Florida Supreme Court, quoting from Carter v. Norman, 38 So.2d 30 (1945), defined local and special laws:
[A] statute relating to particular subdivisions or portions of the state or to particular places of classified locality is a local law. A statute relating to particular persons or things or other particular subjects of a class is a special law.
287 So.2d at 310.
In Cesary v. Second National Bank of North Miami, 369 So.2d 917 (Fla. 1979), the supreme court explained that a general law is one which operates uniformly throughout the state, though this does not require universality of operation over the state. In other words, the legislature may classify according to subject matter and a statute which relates to subjects, persons or things as a class, based upon proper differences which are inherent in or peculiar to the class, is a general law. Id. at 921.
Respondents contend that the Everglades Drainage District enactment involved in Bannerman v. Catts, 80 Fla. 170, 85 So. 336 (1920) is similar to the enactment creating the Greater St. Johns River Basin. In Bannerman, the legislature, in 1913, and 1915, created the Everglades Drainage District which had the power to levy annual special assessments. The District lay within fixed boundaries encompassing 4,300,000 acres of land lying in all or parts of eight counties. The landowners in the affected area claimed they were entitled to notice prior to enactment of the law but the court rejected this stating:
There is no provision of the law whereby the Legislature was required to give the owners any notice before enacting the law.
* * * * * *
The question is not one of a delegation of authority by the Legislature to some board or commission to levy the assessment, for under a delegation of the power to some other instrumentality or board it is probable that notice would have been necessary to the owners; but where the district was created by the Legislature, and the assessment was made by the Legislature, and all things done directly by the lawmaking body, as was done in this case, the legislative will is supreme and there can be no question of failure to give notice.
85 So. at 344.
The reason notice was not required was apparently based upon the principle enunciated in State v. Stoutamire, 131 Fla. 698, 179 So. 730, 733 (1930), wherein the court, in discussing local or special laws, recognized that the term usually refers to:
[L]aw[s] relating to entities, interests, rights and functions other than those of the state, since the organic law does not contemplate or require previous publication of notice of proposed laws for the exercise of state powers and functions though they may be more or less local or special in their operation or objects. (Emphasis added.)
For instance, in State v. Florida State Turnpike Authority, 80 So.2d 337 (Fla. 1955), the court upheld the Turnpike Act from a claim that it was a local or special law. The court stated that the Turnpike Authority was a state agency and that its operation affected traffic statewide. See also Cantwell v. St. Petersburg Port Authority, 155 Fla. 651, 21 So.2d 139 (1945).
As for the Everglades Drainage District, the supreme court, in Martin v. Dade Muck Land Co., 95 Fla. 530, 116 So. 449 (1928) specifically declared that the District was a state agency.[5]
*1138 In the instant case, chapter 77-382 applies only to a relatively small geographical area and subjects real property within that area to ad valorem taxation pursuant to the creation of the Greater St. Johns River Basin.[6] The act does not operate uniformly throughout the state; i.e., it is not potentially applicable to other areas of the state, but rather applies only to those inhabitants of the St. Johns River Water Management District who were not within the Oklawaha River Basin.
The trial court found that the District and Basin are not state agencies and this conclusion is correct in light of article VII, section 9, Florida Constitution, which provides for local governmental entities known as special districts and authorizes them to levy ad valorem taxes for their respective purposes. Therefore, the rationale in Bannerman v. Catts is inapplicable to sustain the enactment of chapter 77-382 without notice.
Respondents contend that the amendatory nature of 77-382 is sufficient to sustain it as a general law and rely on Stone v. State, 233 Ala. 239, 171 So. 362 (1936). In Stone, however, the court, construing the state constitutional requirement that notice be provided prior to enactment of local legislation, rejected a claim that an act could be sustained as a general law because of its amendatory nature. Respondents note that the Stone court commented that the local law made no reference to the general law dealing with the subject and argue that here chapter 77-382 made reference to a general law enactment (chapter 76-243). While we do not decide whether 76-243 is a general law, the rationale of the Stone court appears just as applicable: to permit a local or special law to be enacted without notice because a general law on a related subject exists would emasculate the policies behind the constitutional provision.
For instance, in Housing Authority v. City of St. Petersburg, 287 So.2d 307 (Fla. 1973), the court was confronted with a statutory scheme which created housing authorities in heavily populated cities and counties throughout the state. In 1963 and 1972, two acts were passed which were applicable only to Pinellas County and restricted operation of the housing authority within that county.
The court found that these were special laws and declared:
[T]hey restrict, in Pinellas County only, the powers granted housing authorities throughout the entire state, thereby creating in Pinellas County housing authorities with powers different from all others. The people of Pinellas County were afforded no notice of the intent to enact these restrictions on housing authorities located within their county only.
287 So.2d at 311. The court did not discuss the fact that these two acts were promulgated in reference to existing general law regarding housing authorities.
We conclude that chapter 77-382 cannot be sustained as a general law. The act applies only to one clearly defined area (the area of the St. Johns River Water Management District less those lands in the Oklawaha Basin). It has no application outside the District. By creation of the Greater St. Johns River Basin, lands encompassed within its boundaries were subjected to taxation without notice.
The purpose behind article III, section 10, Florida Constitution (1968), is to inform local citizens of the intended enactment of a law whose applicability will be limited to them. Chapter 77-382 as it applies to creation of the Greater St. Johns River Basin does not operate uniformly throughout the state but rather applies only to those inhabitants and property owners in the St. Johns *1139 River Water Management District who were not within the Oklawaha Basin. Therefore, we hold that chapter 77-382 is a local law and without the notice required by article III, section 10, Florida Constitution, was unconstitutionally enacted.
The second point[7] we will discuss is whether ad valorem taxes levied by the District are unconstitutional state ad valorem taxes.
The trial court found that St. Johns River Water Management District was a "special district" as provided by article VII, section 9(a), Florida Constitution, and thereby authorized to levy ad valorem taxes. Article VII, section 9(b), specifically authorizes levying of ad valorem taxes for water management purposes. Section 373.503, provides the implementing legislation for ad valorem taxation to finance the works of the districts. Article VII, section 1(a), Florida Constitution, prohibits the levying of state ad valorem taxes and effectively limits this method of revenue raising to local governments.[8]
Petitioner contends that the District, rather than levying ad valorem taxes for local or district purposes, is in actuality the alter ego of the Department of Environmental Regulation and is levying taxes for the purpose of funding state functions of the Department in violation of article VII, section 1(a), Florida Constitution.
Water management problems around the state are varying and interrelated and of necessity the districts and the Department of Environmental Regulation have an extensive working relationship. Under section 373.016, the Department has the power and responsibility of managing the waters of this state and may delegate "appropriate powers" to the various water management districts.[9] Many of the functions delegated to the districts by the Department are largely of a local nature over which the state has chosen to retain supervisory authority to assure uniformity and maximum effectiveness among districts.[10] In addition, the powers and duties granted to water management districts by law, which are independent of the Department are extensive. See, e.g., §§ 373.047, 373.0693, 373.0697, 373.083-.099, 373.106, 373.119, 373.129, 373.139, 373.171, 373.1961, 393.409-416, 373.423, 373.429, Fla. Stat. (1979).
Section 373.016 defines the legislative policy regarding the state's water resources. The State of Florida has been blessed with abundant water supplies but because of a lack of conservation and control and an exploding population that abundance is presently threatened. The fact that conservation and maintenance of water resources is a matter of state policy and concern does not mandate expenditures for such purposes only by the state. For example, the development of higher educational institutions is *1140 of state and legislative concern but this has been held the proper subject of ad valorem taxation by the counties. See Board of Public Instruction of Brevard County v. State Treasurer, 231 So.2d 1 (Fla. 1970). In that case, the legislature had enacted laws which removed the operation, control and supervision of junior colleges (community colleges) from local school boards, established the junior colleges as state institutions, and required the local school boards to contribute ad valorem taxes toward support of the state's junior college system. The Florida Supreme Court stated:
[J]unior colleges serve a state function. So do the universities. So do the free public schools. Junior Colleges also serve a distinctly local function.... Ad valorem taxes levied by school districts for support of such institutions are local taxes levied for local purposes.
While the legislature may not circumvent the prohibition of state ad valorem taxation by any scheme or device which requires local ad valorem taxes and then channels the proceeds into essentially state functions which are not also local functions no such situation is here presented.
231 So.2d at 4.
The fact that water resource conservation, control, planning and development are state functions does not make them exclusively so. The availability of adequate fresh water supplies is of critical local interest. The interrelations of various areas of the state mandates supervision of the various water management districts to assure that they do not operate at cross purposes. It is clear that simply because a water management district furthers a state function, policy, or purpose does not prevent it from levying ad valorem taxes where the local function, policy, or purpose is similarly vital to the local district area.[11]
The third question raised by petitioner is whether the expenditure by the St. Johns River Water Management District of its ad valorem tax monies for administrative and regulatory expenses violates chapter 373 as a matter of law.
The trial court found that the use of ad valorem revenues for administrative and regulatory expenses of the District was authorized by section 373.503(3) and chapters 25270 and 61-691, Laws of Florida, as amended. The District admits that some of its ad valorem revenues are spent for its regulatory and administrative expenses.
Petitioner bases its contention on section 373.503(1) which provides:
It is the finding of the legislature that the general regulatory and administrative functions of the districts herein authorized are of general benefit to the people of the state and should substantially be financed by general appropriations. Further, it is the finding of the legislature that water resource programs of particular benefit to limited segments of the population should be financed by those most directly benefited. To those ends, this chapter provides for the establishment of permit application fees and a method of ad valorem taxation to finance the works of the district. (Emphasis added.)
Section 373.503(1) was enacted in 1972 as part of the Water Resources Act. It is a declaration of legislative intent rather than a substantive provision and, by its terms, does not require regulatory and administration functions of the districts be funded solely from general appropriations. Section 373.495 did create an account known as the Water Resources Development Account from which, pursuant to section 373.498, a district could recover monies for
[C]onstructing the works of said district, for the acquisition of lands for water storage areas, for highway bridge construction, and for administration and promotion. (Emphasis added.)
*1141 These provisions, however, do not prohibit expenditure of district ad valorem tax revenues for administrative purposes. The legislative intent of this statutory framework is made clearer by chapter 80-259 (amending section 373.503(1), effective July 1, 1980) which, while not applicable to this case, reads as follows:
It is the finding of the Legislature that the general regulatory and administrative functions of the districts herein authorized are of general benefit to the people of the state and should fully or in part be financed by general appropriations. Further, it is the finding of the Legislature that water resources programs of particular benefit to limited segments of the population should be financed by those most directly benefited. To those ends, this chapter provides for the establishment of permit application fees and a method of ad valorem taxation to finance the activities of the district. (Emphasis supplied.)
In addition, section 373.6161 demands that chapter 373:
[B]e construed liberally for effectuating the purposes described herein, and the procedure herein prescribed shall be followed and applied with such latitude consistent with the intent thereof as shall best meet the requirements or necessities therefor.
In sum, the statutory scheme does not prohibit expenditure of District ad valorem tax revenues for administrative purposes. To accept petitioner's premise that the District cannot use ad valorem tax revenues for administrative purposes would force a conclusion that all administrative functions cease if an inadequate amount was appropriated by the state. This we cannot accept.[12]
At the time this opinion is being written, the state is experiencing a drought of alarming proportions. Each day brings reports of record low water levels in the rivers, lakes and underlying aquifers. Our decision that chapter 77-382 is unconstitutional was not achieved without grave concern as to the consequences on water management and conservation in the St. Johns River Water Management District. The unbridled growth and development of this state has apparently matched and possibly surpassed nature's ability to sustain the demand on the state's resources. However, as critical as this condition may be, we are compelled to rule as our constitution mandates despite our great concern for the cause of conservation.
We therefore GRANT CERTIORARI and hold chapter 77-382, Laws of Florida, to be unconstitutional. Paragraph one of the order of the trial court dated August 8, 1980, holding chapter 77-382 to be a general law is hereby QUASHED and is of no further force or effect.
DAUKSCH, C.J., and COWART, J., concur.
FRANK D. UPCHURCH, Jr., Judge.

ON MOTIONS FOR REHEARING AND CLARIFICATION
Both petitioner, Deseret Ranches of Florida, Inc., and respondents St. Johns River Water Management District and Greater St. Johns River Basin, have petitioned for rehearing and clarification.
The parties have pointed out that certain factual statements contained in the opinion issued August 12, 1981, should be revised. The statement that Deseret Ranches owns land in Seminole County is incorrect. Deseret owns land in Orange, Brevard and Osceola Counties. Also our statement that in all basins other than the St. Johns River Basin, the governing boards are composed of representatives from each of the included counties in the basin was overly broad. This statement should have been limited to *1142 those basins created pursuant to chapter 72-299, Laws of Florida.
An issue which requires clarification is whether the decision of this court holding that chapter 77-382, Laws of Florida, which created and provided the ad valorem taxing mechanism for the Greater St. Johns River Basin, is unconstitutional, should operate prospectively from the date the opinion becomes final.
In Deltona Corp. v. Bailey, 336 So.2d 1163 (Fla. 1976) and Interlachen Lakes Estates, Inc. v. Snyder, 304 So.2d 433 (Fla. 1973), the supreme court enunciated the principle that a decision holding a taxing enactment invalid may operate prospectively from the date the opinion becomes final where persons relying on the statute did so assuming it to be valid. This is in keeping with the general rule that an act of the Legislature is presumed constitutional until invalidated by a final appellate decision. 336 So.2d at 1166.
In the Deltona case, appellant corporation filed suit on December 5, 1974, contending that the county tax assessor erred in not applying the "Rose law" to its 1974 assessment. The trial court ruled that the "Rose law" was inapplicable to the 1974 assessment but on appeal the supreme court found this conclusion was erroneous. The supreme court noted that in Interlachen it held the "Rose law" violated the constitutional requirement of just valuation of all property for ad valorem tax purposes and that it specifically stated that "this decision operates prospectively from the date the opinion becomes final... ." Interlachen at 435. The Interlachen decision became final only when the motion for rehearing was disposed of, on December 9, 1974. Since ad valorem taxes for 1974 became a lien on the property on January 1, 1974, the Deltona court held that appellant was entitled to the benefit of the law for 1974, despite the fact that it was found to be constitutionally infirm.
In Gulesian v. Dade County School Board, 281 So.2d 325 (Fla. 1973), the court likewise found that the decision holding invalid a statute which attempted to authorize school districts to levy ad valorem taxes in excess of 10 mills without a vote of the electors was entitled to prospective operation only. The Dade County School Board, operating under the statute, collected from taxpayers .82 mills over the 10 mill limit and this amounted to $7.3 million dollars. The court, in refusing to apply the decision retroactively or to require a refund, relied upon the equitable considerations enunciated by the trial judge who found:
(1) that the .82 mills represented $7,300,000 that had been collected and expended for school purposes and to require refund thereof in small amounts to over 350,000 Dade County taxpayers would impose an intolerable burden on the School Board; would result in great expense; further complicate its budgetary problems and cause immense administrative difficulties; (2) that the School Board in adopting the .82 mill excess levy acted in good faith in reliance on a presumptively valid statute (F.S. Section 236.25, F.S.A. as amended by Ch. 71-263, Laws of Florida), and has since faced increasingly critical budgeting problems and a refund would greatly compound these problems. (emphasis added)
281 So.2d at 326.
Here the District, in levying the Basin tax, acted in good faith reliance on a presumptively valid statute. The situation is unlike that in Coe v. Broward County, 358 So.2d 214 (Fla. 4th DCA 1978), where there was evidence that the county in assessing certain taxes in excess of the statutory property tax ceiling operated contrary to the obvious intent of the Legislature. Rather, here, the Legislature, pursuant to chapter 77-382, Laws of Florida, created the Basin and the District was charged with the responsibility of levying an ad valorem tax sufficient to fund its operations. See §§ 373.0695, 373.0697, Fla.Stats. (1979). The District was not interpreting or construing its duties under the statute but was merely following the legislative mandate.
In summary, we hold that our decision finding chapter 77-382 to be unconstitutional shall operate prospectively from the date hereof.
*1143 Petitioner has also filed a petition for issuance of a writ to enjoin the District from further assessment, levy, collection, or expenditure of ad valorem taxes under chapter 77-382 pending further judicial review. This petition is denied.
Respondents have filed a similar petition, informing this court that the tax collectors of Orange, Brevard, and Osceola Counties have or will receive ad valorem taxes on behalf of the Greater St. Johns River Basin and that they intend to hold such monies until an order directing distribution is entered. Respondents request an order requiring the tax collectors to pay over these amounts. We do not believe any such order will be necessary in view of this clarification. Because application of this court's decision is prospective only, the Basin will be entitled to receive ad valorem taxes for the year 1981, which accrued on January 1, 1981.[1]
DAUKSCH, C.J., concurs.
COWART, J., dissents without opinion.
NOTES
[1] This rule provides that certiorari jurisdiction of district courts of appeal may be sought to review "non-final orders of lower tribunals other than as prescribed by Rule 9.130... ."
[2] Petitioner's request for a temporary injunction on the issue of the District's alleged unauthorized expenditure of ad valorem taxes was denied by the trial court.
[3] See chapter 72-299, Laws of Florida.
[4] It is well established that a special law enacted without compliance with the notice requirement of article III, section 10, Florida Constitution, is a nullity. Housing Authority v. City of St. Petersburg, 287 So.2d 307 (Fla. 1974); City of Hialeah v. Pfaffendorf, 90 So.2d 596 (Fla. 1956).
[5] While the Everglades District was authorized to levy annual special assessments on property within the District (denoted as a "special assessment ad valorem tax" in Martin v. Dade Muck Land Co.), this did not run afoul of the constitutional proscription against state ad valorem taxes since that prohibition did not come into effect until December 31, 1940. See art. IX, § 2, Fla. Const. (1885) (as amended).
[6] Respondents correctly point out that taxing authority was already in place when chapter 77-382 was enacted. § 373.0697, Fla. Stat. (1979). However, it was only pursuant to 77-382 that the Greater St. Johns River Basin was created and the real property subject to the tax designated.
[7] The second and third points involve ad valorem tax levies and expenditures by the St. Johns River Water Management District and are unaffected by the constitutionality of chapter 77-382 which merely created the Greater St. Johns River Basin.
[8] "No state ad valorem taxes shall be levied upon real estate or tangible personal property."
[9] Section 373.016 vests in the Department the power to delegate "appropriate powers" to the various water management districts. Section 373.103 allows the Department to specifically authorize district boards to exercise certain powers, such as operation of administrative permit systems, cooperation with the U.S. government in flood control and other activities. By Rule 17-1.04(8)(a), Florida Administrative Code, the Department has delegated to the District and other districts the authority to exercise all powers enumerated in section 373.103, save certain exceptions. The Department also retained general supervisory authority over the districts, as provided for in section 373.026(7). This latter provision also permits the Department to review and rescind or modify any policy, rule, regulation or order of a district, except those relating to the internal management of the district, to insure compliance with chapter 373.
[10] For instance, under section 373.103 and through the Department's delegation to districts, the respondent District is authorized to administer and enforce permit systems (which are generally self-supporting due to the collection of permit fees, see section 373.109), establish and control water levels in canals, rivers and lakes throughout the District, and prepare the portion of the state water use plan applicable to the District.
[11] It should also be noted that section 373.503(2)(a) is specific in its admonition that only water management districts may levy the millage authorized by the constitution for water management purposes. Therefore, only the districts, and not the Department, determine whether, or in what amount, such levies will be made.
[12] The record indicates that District ad valorem revenues were used to provide essential support services to the basins, over and above the amounts charged to basin budgets and for maintenance of structures in the upper Greater St. Johns River Basin. This indicates that ad valorem monies are being used to finance "the works of the district" as contemplated by section 373.503(1).
[1] See § 197.056(1), Fla. Stat. (1979).